## DANIEL LOUGHRAN COMPANY, INC., ET AL. *v.* LORD BALTIMORE CANDY & TOBACCO COMPANY, INC., ET AL.

[No. 32, January Term, 1940.]

*Decided April 4th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Lawrence B. Fenneman,* with whom were *Fenneman, Johnson & Cronin* on the brief, for the appellants.

*George V. Parkhurst,* for the appellees.

MITCHELL, J., delivered the opinion of the Court.

The appellants and the appellees in this appeal are all wholesale tobacco distributors engaged in the business of selling at wholesale in the City of Baltimore, and elsewhere, among other things cigarettes of various brands, including especially the brands set forth in the record; and the suit was brought by the appellants against the appellees in the Circuit Court No. 2 of Baltimore City.

The bill alleges that since the first day of June, 1939, the appellees have engaged in the aforesaid business in competition with the appellants in said city, and that contrary to the policy of chapter 248 of the Acts of 1939, which repealed sections 115 to 121, inclusive, of article 83 of the Maryland Code (Supp. 1935) sub-title Fair Trade Act, they have been selling at wholesale the above mentioned products below the cost price to them as defined by the Act. It is further alleged that such sales or offers to sell at said prices are unfair methods of competition; that they have the effect and result of unfairly diverting trade from the appellants and otherwise injuring them as competitors, and that the appellants have suffered loss and injury and are threatened with further irreparable loss and injury if the appellees are permitted to continue said practice. The relief prayed is, (a) that the court pass a decree under the Uniform Declaratory Judgments Act, chapter 294 of the Acts of 1939, declaring the validity of chapter 248 of the Acts of 1939; (b) that by said decree the status and rights of the appellants under chapter 248 be defined, and (c) that said decree further declare the right of the appellants to an injunction against the appellees restraining them from selling or offering for sale the merchandise mentioned, or other tobacco products, in the manner complained of, as defined by chapter 248, "with the intent, effect, or result of unfairly diverting trade from or otherwise injuring a competitor * * * substantially lessening competition, [and] unreasonably restraining trade." Sec. 116.

To this bill the appellees demurred, and the demurrer challenges the validity of the Act upon the following grounds: (1) That chapter 248 violates the 14th Amendment to the Constitution of the United States and article 23 of the Maryland Declaration of Rights, in that it attempts to place unusual restrictions upon lawful occupations, is not within the scope of the police power, and unreasonably and arbitrarily interferes with private business; and (2) that said Act is vague, indefinite, and does not properly enunciate any recognized principles of

law. The appeal is from the chancellor's decree sustaining the demurrer and dismissing the bill.

The Act, of course does not apply to interstate commerce, and is designed to prohibit sales below cost with reference to transactions on the part of wholesale and retail dealers made within the state. The Fair Trade Act was first enacted in this state by chapter 212 of the Acts of 1935 (subsequently repealed and re-enacted by chapter 239 of the Acts of 1937), and was intended originally to regulate contracts for the sale or resale of commodities bearing trade marks, brands or names of the producers or owners of such commodities, the same being in fair and open competition with like commodities of the same general class produced by others, to the end that the producer or manufacturer could maintain a minimum retail price on his product. That part of the Fair Trade Act relating to the above subject matter has been recently declared constitutional by this court. *Goldsmith v. Mead Johnson & Co.*, 176 Md. 682, 7 A. 2nd 176. See *Old Dearborn Corp. v. Seagram Corp.*, 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109; *Kunsman v. Max Factor & Co.*, 299 U. S. 198, 57 S. Ct. 147, 81 L. Ed. 122.

It was not until 1937, upon the passage of chapter 211 by the Legislature, that any attempt was made in this state to regulate sales below cost; and inasmuch as all of the provisions of chapter 211 of the Acts of 1937 were repealed by chapter 248 of the Acts of 1939, and new sections substituted therefor, our consideration of the instant case will be confined to the provisions of the latter Act. The Act defines in intricate detail the method by which the cost price to either the wholesale or retail dealer shall be determined, and applies to all transactions with reference to any product traded in (a) as between wholesalers and retailers, and (b) as between the latter and consumers, respectively. Such parts of the Act as need be quoted are:

"116. It is hereby declared that advertisement, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost as defined in this Act, or

giving, offering to give or advertising the intent of giving away of any merchandise, either by retailers or wholesalers or the advertising by retailers or wholesalers of brands or types of merchandise they are not prepared to supply, with the intent, effect or result of unfairly diverting trade from or otherwise injuring a competitor, or with the result of deceiving any purchaser or prospective purchaser, substantially lessening competition, unreasonably restraining trade, or tending to create a monopoly in any line of commerce, is an unfair method of competition, contrary to public policy, and in contravention of the policy of this Act."

"117. Any retailer who shall, in contravention of the policy of this Act, advertise, offer to sell or sell at retail any item of merchandise at less than cost to the retailer as defined in this Act; or any wholesaler who shall, in contravention of the policy of this Act, advertise, offer to sell, or sell at retail any item of merchandise at less than cost to the wholesaler as defined in this Act, or any retailer or wholesaler who shall, in contravention of the policy of this Act, give, offer to give or advertise the intent to give away any merchandise for the purpose of injuring competitors and destroying competition, or to advertise brands or types of merchandise they are not prepared to supply, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $500.00. * * *""

"118. In addition to the penalties provided in this Act, the courts of this State are hereby invested with jurisdiction to prevent and restrain violations of this Act, and it shall be the duty of the several state's attorneys, in their respective districts, to institute proceedings in equity to prevent and restrain violations. Any person injured by any violation, or who may be threatened with loss or injury by reason of a violation of this Act, shall be entitled to sue for and have injunctive relief in any court of competent jurisdiction, to prevent, restrain and enjoin such violation or threatened violation. * * *""

And section 119 exempts from the provisions of the Act, provided, however, the conditions set forth therein for the disposition thereof by the vendor be followed, (a) merchandise purchased at forced, bankrupt, close-out or other sale outside of the ordinary channels of trade, (b) merchandise sold in *bona fide* clearance sales, (c) perishable merchandise which must be sold promptly in order to forestall loss, (d) merchandise in imperfect or damaged condition, or the carrying in stock of which is being discontinued by the dealer; merchandise sold (e) upon the final liquidation of any business, (f) for charitable purposes, (g) on contract to governmental agencies, (h) in good faith to meet competition, and (i) at judicial sale.

As will be observed from the quoted excerpts, the remedy against violations of the Act may be either penal or injunctive, or both. And for the purpose of establishing such violation *vel non,* the Act prescribes a formula by which the wholesale or retail dealer is to calculate the cost to him of the merchandise he sells.

The basic element of this computation is the invoice cost or replacement cost to the dealer in the quantity last purchased by him, whichever is lower. This is modified by certain deductions representing permitted discounts, and various additions representing specified actual or arbitrarily estimated expenses; the figure thus obtained being the minimum price at which the dealer may legally dispose of his wares within this state.

The purpose of the legislation is to prohibit below-cost sales, but not otherwise to regulate prices, and it is urged by the appellants that the Act is justified as a valid and reasonable exercise of the police power of the State. On the other hand, it is contended that the Act contravenes the 14th Amendment to the Federal Consitution and article 23 of the Maryland Declaration of Rights, which guarantee to citizens of this state property rights of which they shall not be divested in manner other than by "due process of law" or the "Law of the Land."

At common law the right of the individual to dispose of his property or his services at such price as he and the purchaser may agree upon is firmly established, and inasmuch as the Act now under consideration is in derogation of that common right, it must be strictly construed. In other words, we are not to infer that the Legislature intended to change common law principles beyond what is clearly expressed by the statute.

Mr. Cooley, in his work on *Constitutional Limitations,* vol. 2 (8th Ed.), at page 1236, says: "Freedom of contract is not absolute. It is subject to reasonable legislative regulation in the interest of public health, safety and morals, and, in a sense not resting merely on expediency, the public welfare. But restraints upon such freedom must not be arbitrary or unreasonable. Freedom is the general rule and restraint the exception. The legislative authority to abridge can be justified only by exceptional circumstances." *Chas. Wolff Packing Co. v. Court of Industrial Relations,* 262 U. S. 522, 53 S. Ct. 630, 67 L. Ed. 1103; *Comm. v. Boston Transcript Co.,* 249 Mass. 477, 144 N. E. 400; *Adkins v. Children's Hospital,* 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785. The guaranty of due process simply demands that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. *Nebbia v. People of New York,* 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940; 12 *Am. Jur.* 277.

Within the above limitations, "a state is free to adopt and enforce whatever economic policy may reasonably be deemed to promote public welfare, whether by promoting free competition by laws aimed at monopolies, or by curbing harmful competition by fixing minimum prices." *Nebbia v. People of New York, supra;* 12 *Am. Jur.* 278. By the latter authority it is said: "The due process of law clause in the 14th Amendment of the Federal Constitution does not make the statutes of the several states the test of what it requires. *Hebert v. Louisiana,* 272 U. S. 312, 47 S. Ct. 103, 71 L. Ed. 270.

A state cannot make due process of law anything which by its own legislation it chooses to declare as such. In other words, legislative fiat may not take the place of fact in the determination of issues involving life, liberty, or property. *Manley v. Georgia*, 279 U. S. 1, 49 S. Ct. 215, 73 L. Ed. 575. Purely arbitrary or capricious exercise of power whereby a wrongful and highly injurious invasion of property rights is practically sanctioned and the owner stripped of all real remedy is at variance with fundamental principles." *Truax v. Corrigan*, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254; *Fairmont Creamery Co. v. Minnesota*, 274 U. S. 1, 47 S. Ct. 506, 71 L. Ed. 893.

Numerous cases found in the reports of this court justify the conclusion that our predecessors have consistently and zealously upheld and protected the right of the citizen to labor, to hold property and to contract with reference thereto, as well as his right of personal liberty. And except as to legislation enacted within the reasonable exercise of the police power and in the interest of the safety, health, moral, social, or economic welfare of the body politic, this court has at all times adhered to the principle of protecting the individual from unwarranted, unfair, burdensome, discriminatory, and arbitrary legislation. Cases illustrative of these divergent principles are:

*Schneider v. Duer*, 170 Md. 326, 184 A. 914, in which a legislative enactment requiring that an applicant for barber's license should be a graduate of the eighth grade and have completed a two-year course in a barber school or barber shop, with specifications as to what should be included in the course of instruction, was declared unconstitutional in that it imposed an arbitrary and discriminatory restriction upon the right to follow one's vocation, although it is there recognized that the occupation of barbering is a trade or calling that may be subjected to police regulation so far as the health and safety of the public is concerned. *State v. Tag*, 100 Md. 588, 60 A. 465; *Criswell v. State*, 126 Md. 103, 94 A. 549; and *Dasch v. Jackson*, 170 Md. 251, 183 A. 534,

wherein a statute designed to regulate the pursuit of the business of paperhanging was declared unconstitutional upon the ground that the Legislature may not, under the cloak of police regulation, place unnecessary restrictions upon those desiring to engage in that vocation.

Conversely, this court has not hesitated, in cases void of arbitrary and discriminatory provisions, to give its approval to legislation such as the regulation of the business of plumbers, *Singer v. State,* 72 Md. 464, 19 A. 1044; of the practice of dentistry, *State v. Loden,* 117 Md. 373, 83 A. 564; of horse-racing, *Clark v. Harford Agriculture & Breeders' Assn.,* 118 Md. 608, 85 A. 503; of undertakers, *Keller v. State,* 122 Md. 667, 90 A. 603; of certain classes of coal dealers, *Yarger v. State,* 175 Md. 220, 200 A. 731; and of the practice of medicine, *Manger v. Board of Examiners,* 90 Md. 659, 45 A. 891.

Similarly, the Supreme Court has been guided by the same principles indicated in the cited cases, in the construction of statutes involving the application of the police power. In *Tyson & Bro. v. Banton,* 273 U. S. 418, 47 S. Ct. 426, 432, 71 L. Ed. 718, concerning a price-fixing statute, the court said: "It is urged that the statutory provision under review may be upheld as an appropriate method of preventing fraud, extortion, collusive arrangements between the management and those engaged in reselling tickets, and the like. That such evils exist in some degree, in connection with the theatrical business and its ally the ticket broker,˙is undoubtedly true, as it unfortunately is true in respect of the same or similar evils in other kinds of business. But evils are to be suppressed or prevented by legislation which comports with the Constitution, and not by such as strikes down those essential rights of private property protected by that instrument against undue governmental interference. * * * It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers also may be caught." And in *Adams v. Tanner,*

244 U. S. 590, 37 S. Ct. 662, 664, 61 L. Ed. 1336, the court said: "Happily for all, the fundamental guaranties of the Constitution cannot be freely submerged if and whenever some ostensible justification is advanced and the police power invoked." If, therefore, the statute is arbitrary, oppressive and unreasonable; if its enforcement will work greater hardships upon the public than that which it endures under existing conditions, the exercise of the power is wrongfully invoked.

Furthermore, the right of injunctive remedy and the application of penal statutes should not be susceptible of doubt or conjecture. *Miller's Equity Proc.*, sec. 574; *Hardesty v. Taft*, 23 Md. 512; *Spencer v. Falls Turnpike Road*, 70 Md. 136, 16 A. 451. "The legislature, in the exercise of its power to declare what shall constitute a crime or punishable offense, must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain understandable rule of conduct and know what acts it is his duty to avoid." 14 *Am. Jur.* 773, *"Criminal Law,"* sec. 19; 16 *C. J.* 67; *Connally v. General Construction Co.*, 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322.

Reverting to the provisions of chapter 248, section 115 contains what are known as interpretation clauses, defining certain terms used in the Act. Sub-section (d) thereof places this further restrictive qualification upon the method of cost calculation: "Sales to consumers, retailers and wholesalers at prices which connot be justified by existing market conditions within this state shall not be used as a basis for computing costs with respect to sales by retailers and wholesalers." It does not specifically state who is to compute the cost referred to, but as the preceding sub-sections deal with the single subject of ascertainment of "cost" of merchandise to the dealer, inferentially the "cost" in this sub-section is identical with that earlier mentioned, although the language of sub-section (d) may seem somewhat obscure.

Upon the dealer who would avoid transgressing the law there is thus placed the burden of first ascertaining

what are the "existing market conditions," then determining whether those conditions justify a certain price, and finally, upon the assumption that his analysis is correct and his judgment sound, utilizing that figure as a basis for his cost computation. But his conclusion is not controlling, for if his estimate of the situation be erroneous, and if in a judicial proceeding it be subsequently determined, as a fact, that the "existing market conditions" did not justify a certain price, then his calculation, being based thereon, is vitiated; the result being that he stands as a violator of the law. It matters not that he acted in good faith, that his opportunities for acquaintance with market conditions within the state were limited, or that he honestly believed that those conditions, as he knew them, justified a given price.

True, section 119 contains a saving exception with respect to transactions made in good faith, but that relates to the disposition of commodities after the minimum sale price is determined. Sub-section (d) of the interpretation section deals with the preliminary steps necessary to properly fix that cost.

The dealer takes a chance, and if he has accurately judged market conditions, and the relativity of prices to those conditions, he is clear of the law; but if not he is open to its consequences, criminal and civil.

Is the responsibility placed upon those who may be subject to the penalities of the Act of such a character as to constitute an unreasonable burden; and is this portion of the Act so defective as to render the legislation void in its entirety?

It is apparent that this provision, relating to the method of computing cost, is a vital part of the foundation of the legislative structure; and therefore, without regard to the other provisions, if it be held unconstitutional by reason of the uncertainty of its application, and its potential inequities, the other sections die with it. Such clauses sometimes cause more mischief than they were intended to avoid. *Sutherland on Statutory Construction,* p. 515.

Statutes containing language subject to attack upon similar grounds have been construed by a number of courts in various jurisdictions.

In the District of Columbia a statute imposing penalties upon a street railway company if it operated its cars in such manner that they were "crowded," was held void for uncertainty because it failed to define "crowded," leaving the company to form its own conclusion in that respect, which, if erroneous, did not prevent criminal prosecution and punishment. *United States v. Capital Traction Co.,* 34 App. D. C. 592.

In construing the Law Act (41 Stat. 298, sec. 2), which act imposed penalties for making any "unjust or unreasonable rate of charge in handling or dealing in or with any necessaries," the Supreme Court held the measure void upon the ground of uncertainty (*United States v. L. Cohen Grocery Co.,* 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516), Chief Justice White observing that the mere statement of the words rendered elaboration on the subject wholly unnecessary.

In *Augustine v. State,* 41 Tex. Cr. R. 59, 52 S. W. 77, the court held void for uncertainty a statute providing for a different venue in cases of murder by "mob violence."

In *People v. Grogan,* 260 N. Y. 138, 183 N. E. 273, a statute prohibiting driving an automobile in a manner which "unnecessarily interfered" with the use of the highway, or "unnecessarily endangered" users thereof, was held unconstitutional as being too vague and indefinite for enforcement.

In *Hewitt v. State Board of Medical Examiners,* 148 Cal. 590, 84 P. 39, 40, a statute authorizing revocation of the license of a physician for making "grossly improbable statements" in business advertisements, without defining what should constitute such statements, was held void as being unreasonable, uncertain and indefinite; the court saying: "No rule is provided whereby he can tell whether the publication he makes will bring him within the ban of the provision or not. * * * after he has made

the advertisement an *ex post facto* judgment of the board shall determine whether his statement is 'grossly improbable' or not."

As stated in *People v. Yonker*, 351 Ill. 139, 184 N. E. 228, 230: "An act to be valid must be complete when it leaves the Legislature." And in *Vallat v. Radium Dial Co.*, 360 Ill. 407, 196 N. E. 485, in construing a statute requiring certain employers to provide "reasonable and approved devices, means or methods" for preventing industrial and occupational diseases, the court held that portion of the Act void for indefiniteness, saying: "When it leaves the Legislature a law must be complete in all its terms, and it must be definite and certain enough to enable every person, by reading the law, to know what his rights and obligations are and how the law will operate when put into execution."

The Act before us is so drafted as to embrace all trade transactions within the state as between wholesale dealers and retail dealers, and as between the latter and consumers, involving every type of tangible personal property. In addition to that broad provision, it is designed to regulate such transactions to the end that such property may not be advertised, offered for sale, sold or given, as above indicated, at less than cost as defined by the Act, "with the intent, effect, or result of unfairly diverting trade from or otherwise injuring a competitor, or with the result of deceiving any purchaser or prospective purchaser, substantially lessening competition, unreasonably restraining trade, or tending to create a monopoly in any line of commerce."

We are not unmindful that in some states fair trade acts embracing certain of the above dubious terms have been sustained; but at the same time, similar terms in statutes of other states have failed to receive judicial approval.

"In creating an offense which was not a crime at common law, a statute must, of course, be sufficiently certain to show what the legislature intended to prohibit and punish, otherwise it will be void for uncertainty. Reason-

able certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible; but when the legislature declares an offense in words of no determinate signification, or its language is so general and indefinite that it may embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, the statute will be declared void for uncertainty." 16 *C. J.* 67.

In *State v. Packard, Bamberger & Co.*, 123 N. J. L. 180, 8 A. 2nd 291, 294, in declaring unconstitutional a statute designed to prohibit sales below cost and bearing striking analogy to the statute now under consideration, it was said: "What is sought to be accomplished by this act? There is no requirement of criminal or illegal intent or purpose. Indeed, the act may be violated without guilty knowledge. A retailer may not only ordinarily not sell below the cost to him, but, if he seeks to meet competition, he must expertly study and determine that he is buying under market conditions that are justified, or that the price of a competitor, which he must meet, is 'legal.' It is apparent that the statutory inhibitions are uncertain and indefinite. The elements of the proscribed conduct it attempts to penalize are not so clearly expressed that a person is informed of the course it is lawful for him to pursue. Action against an alleged offender thereunder would be arbitrary and unreasonable." See *Commonwealth v. Zasloff*, 137 Pa. Super. 96, 8 A. 2nd 801.

When the far-reaching effect of such legislation is visulized, one is startled at its possibilities. Geographical equations have no standing in the Act, and no trader embraced in its provisions can conduct his business at any time with any degree of certainty that he is not violating the law, whenever, in his own business discretion, he sells a commodity below cost, without first complying with unnecessary and burdensome regulations placed upon him for the purpose of bringing the transaction within the exemptions of the Act. He may have no

knowledge that his below-cost transaction will injure any competitor within the reasonable radius or zone in which he conducts business, but, somewhere or somehow, his below-cost sale has had the result of injuring a competitor in the far end of the state, and he has violated the Act.

For the reasons stated, it is unnecessary to discuss the severability of the injunctive and penal features of the Act, pressed by the appellants in their argument. We hold that it is in conflict with the Constitution of this State, and that such unconstitutionality strikes down both features of the same.

It follows that there was no error in the decree appealed from and the same will be affirmed.

The case of Benjamin Middleman, William Weise and Arthur L. Rosenberg, co-partners trading under the firm name of *Middleman & Wise v. E. Asbury Davis et al.,* No. 33, January Term, 1940, involving the same questions as those presented by the instant case, was submitted under the same arguments and briefs; and as the views set forth in this opinion are applicable to that case, the decree therein will also be affirmed.

*Decree affirmed, with costs.*