WILEY MOTORS, INC., A NEW JERSEY CORPORATION; WILEY, INC., A NEW JERSEY CORPORATION; SAMUEL D. WILEY, TRADING AS THE NEW JERSEY FULGENT CO.; AND THE NEW JERSEY FULGENT CO., INC., A NEW JERSEY CORPORATION, PROSECUTORS, v. UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, DEFENDANT.

Submitted October 6, 1942—Decided March 29, 1943.

Before Justices CASE, DONGES and COLIE.

For the prosecutors, *Leon Semer* (*Stephen F. Somogyi*, of counsel).

For the defendant, *Charles A. Malloy* (*Herman D. Ringle*, of counsel).

The opinion of the court was delivered by

COLIE, J.   This writ of *certiorari* brings up for review a decision of the Unemployment Compensation Commission of New Jersey that "Wiley Motors, Inc., and Samuel E. Wiley t/a New Jersey Fulgent Co. are employers as of January 1st, 1936, in accordance with *R. S.* 43:21-19 (h) (1) by application of subsection 19 (h) (4) of the New Jersey Unemployment Compensation Law.

"The New Jersey Fulgent Co., Inc., is an employer as of May 29th, 1936, in accordance with *R. S.* 43:21-19 (h) (2).

"Wiley, Inc., is an employer as of March 4th, 1938, in accordance with *R. S.* 43:21-19 (h) (2)."

The holding above was rendered after a hearing upon the application of the prosecutors herein for a refund in the amount of $1,025.87, the sum paid by them under protest for contributions levied against them, or some of them, as employers for the years 1936, 1937, 1938 and 1939.

The facts are not in dispute.   Wiley Motors, Inc., was organized in 1933; Samuel D. Wiley owning 100 shares of its capital stock and being its president and treasurer; Frank H. Durham, holding eight shares and being its vice-president; Ida Jaffe Hamburg, holding two shares and being secretary. The business of the corporation was the retail sale of motor trucks, tires, tubes and the repairing of trucks.   It had two employees, exclusive of the officers.   In the latter part of 1937 it ceased business and early in 1938 Wiley, Inc., was organized and succeeded to the business of its predecessor.   Samuel D. Wiley was its president and treasurer, holding four shares of stock; Anna R. Wiley, his wife, also held four shares and was vice-president and secretary; Samuel Wiley (the father of Samuel D. Wiley) was not an officer but held four shares. The latter company also had five employees, including officers. In 1939 Wiley, Inc., ceased operations and is now dormant. New Jersey Fulgent Co., Inc., was organized in May of 1936; Samuel D. Wiley, president and treasurer holding eight shares; Anna R. Wiley, vice-president, holding one share; Ethel Kessler Shapiro, secretary, holding one share.   Its total employees including officers, is six.   Prior to its incorporation in 1936 the same business of manufacturing aeroplane flares

and signal devices was carried on by Samuel D. Wiley, individually, under the trade name of New Jersey Fulgent Co. It is conceded that the number of employees of the affiliated companies for the respective years under consideration was eight or more.

The Unemployment Compensation Commission levied yearly employer's contributions as follows:

### 1936

| | |
|---|---|
| Wiley Motors, Inc. .................... | $73.74 |
| New Jersey Fulgent Co., Inc. ........... | 48.18 |

### 1937

| | |
|---|---|
| Wiley Motors, Inc. .................... | $85.39 |
| New Jersey Fulgent Co., Inc. ........... | 139.52 |

### 1938

| | |
|---|---|
| Wiley, Inc. ......................... | $143.98 |
| New Jersey Fulgent Co., Inc. ........... | 336.44 |

### 1939

| | |
|---|---|
| Wiley, Inc. ......................... | $114.10 |
| New Jersey Fulgent Co., Inc. ........... | 84.52 |

The total of these contributions, $1,025.87, is the subject-matter of this proceeding.

The section of the Unemployment Compensation Act applicable to the instant situation is *R. S.* 43:21-19 which reads as follows:

"As used in this chapter, unless the context clearly requires otherwise:

"(h) 'Employer' means:

"(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment, eight or more individuals (irrespective of whether the same individuals are or were employed in each such day);

"(2) Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this chapter;

"(3) Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another employing unit and which, if treated as a single unit with such other employing unit, would be an employer under paragraph (1) of this subsection;

"(4) Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise), directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforcible means or otherwise), and which, if treated as a single unit with such other employing unit or interests, would be an employer under paragraph (1) of this subsection."

Prosecutor writes down twelve reasons why the decision under review should be reversed. First, that prosecutors are not affiliated within the meaning of R. S. 43:21-19 (h) (4); second, that prosecutors are not subject employers because they do not separately have eight or more individuals in employment; third, that the statute has no application since the businesses are unrelated and were not organized or split up to evade subject status; fourth, that the decision of the Unemployment Compensation Commission violates the separate corporate existence, character and property rights of prosecutors; fifth, that the decision under review enlarges the scope of covered employers in a manner not contemplated or intended by the legislature. The remaining seven reasons may be summed up by stating that they each allege a violation of the United States Constitution, more specifically the Fourteenth Amendment thereof.

Prosecutor's first argument is that there is no affiliation within the meaning and contemplation of R. S. 43:21-19 (h) (4). This argument is, in the main, based upon the contention that the purpose of the affiliate clause was to prevent a split-up of employing units in order to avoid subject status under the act, and that the section here under consideration

is a stop-gap provision and not a general regulatory measure. This argument is apparently grounded on the prosecutors' construction of the opinion of the Supreme Court in *Milrose Co., Inc., et al.* v. *Unemployment Compensation Commission,* 126 *N. J. L.* 441. In the course of that opinion the court said, with reference to the statutory provision here under consideration that its purpose is to prevent employing units splitting up into parts, each employing less than eight employees so as to escape assessments for employers' contributions. In fact, the cited case turned upon and was decided upon a finding that there were not eight or more individuals employed as is required by the statute, and that in order to find eight or more employees, it would be necessary to count officers twice, once for each corporation. That situation does not arise in the case now under consideration, since the employees number eight without counting the officers common to the several corporations but once.

In the instant case, the Unemployment Compensation Commission found that Wiley Motors, Inc., and Samuel D. Wiley, trading as the New Jersey Fulgent Co. were employers on January 1st, 1936, by reason of the fact that the two named employing units were "owned and controlled by the same interests." This fact of ownership and control was stipulated in the record and subsection 19 (h) (4) specifically provides that such employing units are given subject status. The decision further found that New Jersey Fulgent Co., Inc., and Wiley, Inc., were employers by reason of the acquisition respectively of the business and substantially all of the assets of Samuel D. Wiley, trading as New Jersey Fulgent Co. and of Wiley Motors, Inc., which latter, it will be recalled, ceased business in the latter part of 1937 and a few months before the incorporation of Wiley, Inc. The record indisputably bears out the fact that New Jersey Fulgent Co., Inc., and Wiley, Inc., each acquired the organization, trade or business, or substantially all of the assets, of its respective predecessor.

The main attack on the statute is predicated upon an alleged violation of the Fourteenth Amendment of the United States Constitution, which reads: "No State shall make or enforce any law which shall abridge the privileges or immuni-

ties of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The expressed purpose of the act here under consideration is to alleviate the evils of involuntary unemployment and thereby to achieve a degree of social security essential to the health, morals and general welfare of the people of the state, and the statute specifically provides that this aim be considered in the interpretation and application of the act. Prosecutors call our attention to decisions of a number of sister states in which "affiliate or common control" sections, identical to *R. S.* 43:21-19 have been held to violate the Fourteenth Amendment of the Federal Constitution. The power of the legislature to act in this field is unlimited, except in so far as it may trench upon the Fifth Amendment or the Fourteenth Amendment of the Federal Constitution, and the guaranty of due process demands only that the law shall not be unreasonable, arbitrary or capricious and that the means selected shall have a real and substantial relation to the object sought to be obtained. *Nebbia* v. *New York,* 291 *U. S.* 502; 78 *L. Ed.* 940. Establishing at eight the number of employees which brings the employing unit within subject status does not seem to us unreasonable, arbitrary or capricious, bearing in mind that the line must be drawn at some point, and that it is within the competence of the legislature to determine that eight employees was the lowest figure which it could set, having due regard to the incidence of involuntary unemployment in small employments and the necessity for the filing of reports and investigation thereof by the body charged with carrying out the plan. There can be no question but that the means selected bear a real and substantial relation to the objects sought to be obtained, bearing in mind that that object is the alleviation of the evils of involuntary unemployment. It is argued that the legislation is discriminatory in that it falls upon employers of eight or more and does not fall upon those employing less than eight. The same argument is apposite in many cases of legislation but we believe it to be settled law that if the legislation has a reasonable relation to a proper legislative func-

**36**

tion and purpose and is not arbitrary, that then the requirements of due process are satisfied in that respect. We are urged to declare this action unconstitutional and in support it is said that some thirteen sister states have either amended or repealed comparable sections of the Unemployment Compensation Acts within those states. Suffice it to say that the state is free, through its legislature, to adopt any economic policy that it may deem reasonable to promote its public welfare, and courts are without authority to override any legislative acts passed in furtherance of that economic policy, providing always that such legislation does not transcend constitutional limitations and we find no such infirmity in the act under consideration.

For the reasons stated above, the writ of *certiorari* is dismissed, with costs.