BLUM ET AL. *v.* ENGELMAN ET AL.

[No. 86, October Term, 1947.]

110

*Decided February 25, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Herbert H. Rosenbaum* for the appellant.

*Lawrence B. Fenneman* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The purpose of this suit is to restrain violation of the
Unfair Sales Act of Maryland, and the constitutionality
of the Act has been challenged. Laws of 1941, ch. 330,
Laws of 1943, ch. 803, Code Supp. 1943, Art. 83, secs.
111-115.

The suit was instituted in Circuit Court No. 2 of Bal-
timore City by Benjamin Engelman and David Engel-
man, trading as M. Engelman & Sons, who have been
selling cigarettes at retail at 27 North Howard Street.
They allege in their bill of complaint that Abraham Blum,
trading as Ben's Cut Rate Store at 305 North Eutaw
Street, has been selling Camel, Chesterfield, Lucky Strike
and Old Gold cigarettes at $1.43 per carton, while the cost
of these brands to him was $1.54. They further alleged
that he has been selling them below cost with intent to
injure them and destroy competition. They prayed that
he be enjoined from selling cigarettes at less than cost,
as defined by the Unfair Sales Act.

Defendant demurred to the bill on the ground that the
Act places upon a lawful occupation unusual restrictions
which arbitrarily interfere with private business, and
hence the Act violates the Fourteenth Amendment of the
Constitution of the United States and Article 23 of the
Maryland Declaration of Rights. The chancellor over-
ruled the demurrer, and defendant appealed from that
order.

The Unfair Sales Act, like the Fair Trade Act, is aimed
at price-cutting. The Fair Trade Act is said to have
grown out of a contest of small retailers and independent
wholesalers against a practice of chain stores and large
department stores of cutting prices on nationally adver-
tised products in order to attract customers with the

object of selling them other merchandise along with the "loss leaders." In 1939 the constitutionality of the Maryland Fair Trade Act (Laws of 1937, ch. 239, Code 1939, art. 83, secs. 102-110), was challenged, but the Court of Appeals held it constitutional and enforceable. *Goldsmith v. Mead Johnson & Co.*, 176 Md. 682, 7 A. 2d 176, 125 A. L. R. 1339.

The first Unfair Sales Act in Maryland took effect on June 1, 1937. Laws of 1937, ch. 211. The Act was repealed and superseded by another Act two years later. Laws of 1939, ch. 248. The Act of 1939 made an offer to sell or sale of merchandise as less than cost a misdemeanor punishable by a fine not exceeding $500. The Act also gave to any aggrieved dealer the right to obtain an injunction to restrain a violation or threatened violation thereof. In 1940 the Court of Appeals held the Act unconstitutional. *Daniel Loughran Co. v. Lord Baltimore Candy & Tobacco Co.*, 178 Md. 38, 52, 12 A. 2d 201.

The 1939 Act was annulled on account of two provisions. One of these provisions was to the effect that sales "at prices which cannot be justified by existing market conditions" should not be used as a basis for computing costs. Laws of 1939, ch. 248, sec. 115 (d). This provision required a dealer to make a survey of "existing market conditions," and thereupon determine whether such conditions justified a certain price, and from that price the cost was to be computed. The dealer's computation was not conclusive, and accordingly if his analysis of "existing market conditions" was not correct, and it was determined in a judicial proceeding that the conditions did not justify the price, then, even though he honestly believed that his survey justified that price, his computation would be rejected, and he would stand as a violator of the law.

The other provision made it unlawful to offer for sale or sell any merchandise at less than cost "with the intent, effect or result of unfairly diverting trade from or otherwise injuring a competitor." Laws of 1939, ch. 248, sec. 116. That provision failed to provide a definite

standard by which the dealer could ascertain whether he was complying with the law, because it was impossible to know whether a sale would have the "effect or result" of injuring a competitor somewhere within the State. The Act violated the rule that the application of a penal statute or the right to injunctive relief should not be a matter of uncertainty and conjecture. It is well settled that a statute which prohibits the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application violates the constitutional guarantee of due process of law. *State v. Magaha,* 182 Md. 122, 32 A. 2d 477. The Act of 1939 did not provide a reasonably ascertainable standard of guilt, and thus was not sufficiently explicit to enable a person of ordinary intelligence to ascertain with a fair degree of certainty what sales it intended to prohibit.

In 1941 the Legislature repealed the 1939 Act and passed the existing Act. Laws of 1941, ch. 330. The 1941 Act corrected both of the defects. In the first place, Section 112 definitely defines "cost to the retailer" as the invoice price of the merchandise or the replacement cost, whichever is lower, less all trade discounts except customary discounts for cash, to which shall be added (1) freight charges not otherwise included in the invoice or replacement cost, (2) cartage to the retail outlet if performed or paid for by the retailer, and (3) a mark-up to cover in part the cost of doing business, which mark-up, in the absence of proof of a lesser cost, shall be 5 per cent of the cost of the retailer, after adding thereto freight charges and cartage, but before adding thereto the mark-up. Section 112 also definitely defines "cost to wholesaler." Section 112 was repealed and re-enacted with amendments in 1943, but the definitions of "cost to retailer" and "cost to wholesaler" remain definite. In the second place, the 1941 Act omitted the words "effect or result." Section 113 provides that no dealer shall sell or offer to sell at less than cost "with intent to injure a competitor. * * * or destroy any competition."

114

Various Unfair Sales Acts have been enacted in other States. Some of these Acts have been held void for one reason or another. The Pennsylvania and New Jersey Acts were invalidated for the reason that they did not include intent to injure a competitor as an element of the offense. *Commonwealth v. Zasloff*, 338 Pa. 457, 13 A. 2d 67, 70, 128 A. L. R. 1120; *State on Complaint of Lief v. Packard-Bamberger & Co.*, 123 N. J. L. 180, 8 A. 2d 291. But most of the Acts in other States have been sustained. *Carroll v. Schwartz*, 127 Conn. 126, 14 A. 2d 754; *Moore v. Northern Kentucky Independent Food Dealers Ass'n*, 268 Ky. 24, 149 S. W. 2d 755; *Rust v. Griggs*, 172 Tenn. 565, 113 S. W. 2d 733; *McElhone v. Geror*, 207 Minn. 580, 292 N. W. 414; *Associated Merchants of Montana v. Ormesher*, 107 Mont. 503, 86 P. 2d 1031; *State v. Langley*, 53 Wyo. 332, 84 P. 2d 767; *Dikeou v. Food Distributors Ass'n*, 107 Colo. 38, 108 P. 2d 529; *State of Arizona v. Walgreen Drug Co.*, 57 Ariz. 308, 113 P. 2d 650; *Wholesale Tobacco Dealers Bureau of Southern California v. National Candy & Tobacco Co.*, 11 Cal. 2d 634, 82 P. 2d 3, 118 A. L. R. 486; *State of Washington v Sears*, 4 Wash. 2d 200, 103 P. 2d 337.

The Maryland Act no longer contains a penal provision. Nor does it apply to sales or offers to sell in any of the following cases: (1) where merchandise is sold in *bona fide* clearance sales, if advertised, marked, and sold as such; (2) where merchandise must be sold promptly in order to forestall loss; (3) where merchandise is imperfect or damaged, or is being discontinued, and is advertised, marked and sold as such; (4) where merchandise is sold upon final liquidation of any business; (5) where merchandise is sold for charitable purposes or to relief agencies; (6) where merchandise is sold on contract to departments of the government or governmental institutions; (7) where merchandise is sold by any officer acting under the order or direction of any court; and (8) where the price of the merchandise is made in good faith to meet competition. The Connecticut Act closely resembles the Maryland Act, and the Supreme Court of

Errors of Connecticut sustained the constitutionality of the Act in an opinion which is carefully limited to the question now presented and distinguishes different Acts and different questions not actually presented. *Carroll v. Schwartz,* 127 Conn. 126, 14 A. 2d 754.

It is acknowledged that price-cutting is not an evil in itself. On the contrary, the more intense the competition the greater the likelihood of advantage to the buying public. In fact, there is no reason why a merchant under ordinary circumstances should not have the right to make an absolute gift to his customers if he desires to show generosity or advertise his business. It is only when the object of price-cutting is sinister that the sale of goods at less than cost may constitute an economic evil. Freedom of contract is subject to legislative regulation in the interest of public health, safety, morals or welfare. But such legislation must not be unreasonable, arbitrary, or capricious, and the means selected must have a real and substantial relation to the object sought to be attained. Within these limitations the State is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, whether by promoting free competition by statutes aimed at monopolies or by curbing harmful competition by fixing minimum prices. *Daniel Loughran Co. v. Lord Baltimore Candy & Tobacco Co.,* 178 Md. 38, 44, 12 A. 2d 201. It is our conclusion that the Unfair Sales Act, prohibiting sales below cost with intent to injure competitors and to destroy competition, promotes a policy within the police power of the State.

Section 113 of the Act contains a provision that evidence of any advertisement, offer to sell or sale of any item of merchandise by any retailer or wholesaler at less than cost to him shall be *prima facie* evidence of intent to injure a competitor or destroy competion. No question of the validity of this provision is now before us, as the present appeal is from an order overruling a demurrer. If this provision should be held to deny due process, it would not invalidate the rest of the Act, as the provision

is procedural in its nature and is separable from the other provisions.

As we find nothing on this appeal in contravention of the Fourteenth Amendment of the Federal Constitution or Article 23 of the Maryland Declaration of Rights, we affirm the order overruling the demurrer.

*Order affirmed and cause remanded, with costs.*