# WARREN v. BOARD OF APPEALS, STATE OF MARYLAND DEPARTMENT OF EMPLOY-MENT SECURITY

[No. 297, September Term, 1960.]

2

4

6

[redacted]

*Decided June 16, 1961.*

[redacted]

The cause was argued before Brune, C. J., and Henderson, Prescott, Horney and Marbury, JJ.

*Wilson C. Warren, pro se,* for the appellant.

*James N. Phillips, General Counsel,* with whom were *Peter Sfekas, Assistant General Counsel for Maryland Department of Employment Security, Thomas B. Finan, Attorney General,* and *Bernard S. Melnicove, Special Assistant Attorney General,* on the brief, for the appellee.

Horney, J., delivered the opinion of the Court.

The principal question raised by this appeal is whether Wilson C. Warren (the appellant), a registered land surveyor, was an employer within the meaning of the Unemployment Insurance Law (UIL) during the period from January 1, 1958, until July of 1959. The executive director of the Department of Employment Security (D.E.S. or department), having raised the question on his own motion, subsequently determined, on the evidence produced at a formal hearing before the hearing officer, that the appellant was an employer and that he must report the names and amounts earned by his employees and pay contributions thereon as required by

law. The employer appealed first to the Board of Appeals of the D.E.S. and then to the Circuit Court for Howard County. The board of appeals affirmed the determination of the executive director and the court affirmed the decision of the board, whereupon the appellant appealed to this Court.

Although the appellant has listed thirteen contentions in a haphazard sort of way, the questions presented fall into three categories: (i) those concerning procedure; (ii) those concerning the facts; and (iii) those concerning the applicable law.

The facts are not complicated. In 1951 the appellant reported to the D.E.S. that he was engaged in the business of surveying. From 1951 through 1957, he reported the employees he had, declared their wages and paid contributions thereon. Beginning with the first calendar quarter of 1958, he filed quarterly returns showing there had been no employment. The department accepted these reports until, on the return for the fourth quarter of 1958, he noted that he was carrying on his business without employees and instead was using only "occasional assistance from associates, part-time helpers or independent contractors."

This information caused the department to surmise that the appellant was probably misusing the terms "associate" and "independent contractor," and, since a "part-time helper" is covered under the law, it was thought that the failure to report any employment and wages for the year 1958 was in error. And when efforts to have the appellant settle the matter with a field representative proved unsuccessful, the case was referred to the legal department and a subpoena duces tecum was issued to compel the appellant to appear before the hearing officer with his records of payments of money to others for services rendered.

At the hearing on July 22, 1959, before the hearing officer, the appellant testified that he had been in business as a surveyor during the year 1958, and admitted that he had had several persons help him with his work. But the only record of any practical use produced in obedience to the subpoena was an income tax return for that year showing that

he had taken credit for $709.52 as having been paid to "associates" for services rendered during the period covered by the tax return. The appellant claimed that the persons thus employed were casual employees and as such were not covered by the UIL.

The appellant conceded that his son (who was over twenty-one years of age), two high school students and two other persons had rendered services during the period in question. None of these persons was reported to the D.E.S. as employees and no contributions were paid on the remuneration received by them for services rendered. Such other facts and circumstances concerning the issues and procedures involved in this proceeding will be stated from time to time as the occasion may require.

The pertinent procedural provisions of the statute include:

Section 8 (d) of Art. 95A of the Code of 1957, which provides in part that the executive director, on his own motion or on the application of an employing unit, shall "on the basis of facts found by him determine whether an employing unit is an employer and whether services performed for it constitute employment, and the contribution rate to be assigned to an employer"; that an employer may appeal to the board of appeals as a matter of right; that the board shall afford the parties (employer and executive director) a "reasonable opportunity for a fair hearing"; and that the decision of the board shall be final "unless the employing unit * * * initiates judicial review."

Section 15 (c), among other things, provides that an aggrieved employer may secure a judicial review of the action of the board of appeals by appeal to the circuit court of the county in which the employer does business; that in any judicial proceeding under this section the findings of the board "as to the fact, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of [the] court shall be confined to questions of law"; and that an appeal may be taken to this Court.

(i). Questions Concerning Procedure.

When the board of appeals answered the petition and ap-

peal of the appellant filed in the circuit court, the appellant demurred to the answer. The court overruled it. The action of the court was proper. The conventional answer did no more than deny the allegations of the petition and appeal and demand strict and legal proof thereof and correctly avers that the findings of the board, absent a showing of fraud, were conclusive on the court. The demurrer—which in substance had simply reiterated and argued some of the reasons previously stated for taking the appeal—was clearly inappropriate in that it did not comply with Maryland Rule 345 (and Rule 301). After the appeal to the lower court had been heard the appellant sought an extension of time for the filing of a memorandum on the law and the board of appeals, in answer to the petition, opposed the extension. The appellant demurred to the answer. This demurrer, since it was likewise impertinent and irrelevant, was also properly overruled.

The appeal to the circuit court was set for a hearing at Ellicott City on Tuesday, May 31, 1960, but the appellant, although he was fully aware of the date of trial and that the three-day Memorial Day holiday would begin on Saturday, May 28, did not request subpoenas for the witnesses (all of whom were residents of Baltimore City) he claimed were material to his case until Friday, May 27. When none of the witnesses appeared at the hearing, he moved for a postponement, but the court refused to grant it. Apparently the appellant, in requesting postponement made no effort to comply with the provisions of Rule 527 c, relating to the testimony of absent witnesses, as he might have done if the testimony of such witnesses were material, competent and proper. Since the granting of postponement was discretionary, and no abuse has been shown, we cannot say that the court erred in refusing to grant the motion.

With regard to the request for an extension of time within which to file his memorandum on the law, the appellant further contends that it was error for the court to limit the filing time. In the absence of a local rule regulating the time, the matter would be within the sound discretion of the court. Certainly the refusal to extend the time further did not, as the

appellant claims, constitute a denial of a fair trial or the right of the appellant to his day in court.

The final procedural question concerns the payment of costs. The appellant contends that the appellee should pay them because "the case is of great importance to the administration of the law." The claim is not well founded. In the absence of an order of court providing otherwise, the rule is that "the prevailing party shall be entitled to the allowance of court costs" in the lower court. Rule 604 a; *Sinclair Estates, Inc. v. Chas. R. Guthrie Co.*, 223 Md. 572, 165 A. 2d 775 (1960). The same is true with respect to the costs in this Court. See Rule 882 a.

### (ii). Questions Concerning The Facts.

The lower court, at the hearing before it, refused to permit a witness for the appellant to express an opinion "concerning the irregularity of the proceedings" before the hearing officer. The court also sustained an objection to a question aimed at ascertaining whether the field representative of the department (G. Calvin Whiteley) was "an officer or committee member in any political organization" or whether he was "a candidate for any elective office." Since both questions were clearly irrelevant to the subject of the appeal, the rulings of the court were proper.

The appellant claims that the actions of the D.E.S. were unwarranted, overzealous, prejudicial, fraudulent and capricious. Even if these contentions are properly before us, there is no evidence to support them and they are based only on those things the appellant (without legal justification) disapproved of or found fault with concerning the lawful actions of the executive director, the field representative, the hearing officer and other persons constituting the personnel of the department, as well as the chairman and executive secretary of the board of appeals and the general counsel to the department. None appears to have any real bearing on whether the finding of fact was supported by the evidence or whether there was fraud. The claim of prejudice was based only on the charge of the appellant that the department had already made up its mind that he was liable for the tax. The claim

of fraud was based only on his assertion that the notice of hearing to discover whether there was coverage was fraudulent because it purported to be a "petition" by the appellant when in fact it had been initiated by the department. Both of these claims, as were those merely asserting without more that the actions of the department officials and employees were unwarranted, overzealous and capricious, were clearly without merit. It was the duty of the department to establish if it could that the employer had one or more persons in his employ performing services for him. The burden of proving that such services as were rendered were not in covered employment was on the appellant.

It is further contended that the lower court erred when it applied the statutory tests (which will presently be discussed) to the employees of the appellant. Apparently the claim is—since he contends that the "associates" were not hired for wages but shared in the profits and losses—that he was not an employer. However, since the appellant admits that he was the only registered surveyor involved, it is clear that the lower court, in applying the tests as it was bound to do, correctly pointed out in its opinion (a) that those who helped him with the surveying projects had to be under his direction and control; (b) that the services performed for him by others were in furtherance of, and not outside of, the usual course of his business; and (c) that there was nothing in the records (either before the hearing officer, the board of appeals or the lower court) to indicate that the persons who were performing services for the appellant were customarily engaged in independently established occupations of the same nature as surveying.

The next to the last contention as to the facts, that the opinion of the lower court is contrary to the facts, also lacks substance. Regardless of whether the appellant "commenced business in 1951" or later, he admits that he testified before the board that he had "done survey work for many years." And, even though the 1958 income tax return of the appellant was introduced as evidence to show that he had "associates" there was no reason why the board could not deduce from

that fact—since he had taken credit for payments made to them for services rendered—that such "associates" were in covered employment.

Finally, even if the question is before us, the record does not disclose that the claimed delay in requesting "amended" reports for the four quarters of 1958 was in any way prejudicial to the appellant.

### (iii). Questions Concerning The Applicable Law.

As to the claims of unconstitutionality, it is contended that the title to the amendment (Chapter 36 of the Acts of 1956) changing the title of Article 95A from "Unemployment Compensation Law" to "Unemployment Insurance Law" was defective because the title as changed does not describe the statute sufficiently. The contention is devoid of merit. While it is true that the amended statute embraced a comprehensive scheme for providing a system of unemployment benefits and obligations, it is clear that the title of the amending act embraced only one subject which was fully described therein —the changing of the name by which Article 95A should, after June 1, 1956, be known and cited—and that is all that is required. And, since the body of the act—which simply provided that the term "unemployment insurance" should be substituted for the term "unemployment compensation" wherever it appeared in Article 95A—was not at variance with the title, the amending act was not invalid by reason of a defective title. Time and time again we have said that before a statute will be held invalid on account of a defect in the title, it must be shown that something in the body of the act is entirely foreign to the subject matter described in the title. *Neuenschwander v. Wash. San. Comm.*, 187 Md. 67, 48 A. 2d 593 (1946). See also the recent cases of *Allied American Co. v. Com'r*, 219 Md. 607, 150 A. 2d 421 (1959); *Board of County Com'rs of Prince George's County v. Donohoe*, 220 Md. 362, 152 A. 2d 555 (1959); *Magruder v. Hall of Records Comm.*, 221 Md. 1, 155 A. 2d 899 (1959); *Jacobs v. Klawans*, 225 Md. 147, 169 A. 2d 677 (1961).

It is further contended that the statute is unconstitutional

in that the enforcement of its provisions against the appellant was a denial of his right to due process, of his freedom of contract and of his right to privacy. As to due process, the claim is that the D.E.S. was without authority to issue a subpoena duces tecum to require the appellant to produce his business records before the hearing officer and thereby submit himself to an inquisition as grueling as an investigation by a grand jury. The contention is groundless. Although the appellant would have been protected against self-incrimination by the terms of § 12 (j) had he claimed that privilege, the statute, in addition to requiring the executive director to administer the law and cloaking him with full power and authority to do so, also specifically authorized representatives of the D.E.S. to issue subpoenas not only to require the attendance of an employer as a witness but also to compel him to produce such of his records as might be necessary for the purpose stated in the subpoena. Besides this, the courts of other states as well as the Federal courts (including the Supreme Court of the United States) have consistently held that the unemployment insurance (or compensation) statutes of other states having statutes similar to that in this State do not violate the due process or equal protection clauses of the Federal Constitution. See *Carmichael v. Southern Coal Co.,* 301 U. S. 495 (1937), involving the Alabama statute, which is controlling on the question of due process, and *Chamberlin v. Andrews, Stearns, et al.,* 299 U. S. 515 (1936), involving the New York statute. See also *Howes Bros. Co. v. Mass. Unemp. Comp. Comm.,* 5 N. E. 2d 720 (Mass. 1936) ; *Maine Unemp. Comp. Comm., v. Androscoggin Junior, Inc.,* 16 A. 2d 252 (Me. 1940) ; *Wiley Motors v. Unemp. Comp. Comm.,* 31 A. 2d 39 (Sup. Ct. N. J. 1943), *aff'd* 35 A. 2d 894 (Ct. of E. & A. N. J. 1944) ; *Rhode Island Unemp. Comp. Bd. v. Conway,* 73 A. 2d 109 (R. I. 1950).

It has also been held that an unemployment insurance statute, which forbade the employer and employee to make a contract changing the burden of the required contributions, did not violate the constitutional guarantee of freedom of contract. *Howes Bros. Co. v. Mass. Unemp. Comp. Comm.,*

14

*supra.* See also 48 Am. Jur., *Social Security, Unemployment Insurance, Etc.,* § 3. Furthermore, as we see it, the Maryland statute does not limit the right of the appellant to contract with an employee. All that the statute does is to authorize those who are charged with its enforcement to look through the "tag" placed on the employment relationship by the parties and determine, as a matter of fact, whether the relationship (regardless of what it may be called) comes within the purview of the statute. It has been held that even the freedom of contract is subject to legislative regulation in the interest of public welfare. See *Blum v. Engelman,* 190 Md. 109, 57 A. 2d 421 (1948). The contention that an employer can take his relationship with an employee out of the statute by applying another name to it is clearly not sustainable. To so hold would nullify the very purpose of the statute.

We do not know what the appellant had in mind in making the claim that he has a constitutional right to privacy. It may be—since he asserts that being compelled to disclose the names of his "associates" was a violation of his rights—that the appellant assumed that the issuance of the subpoena duces tecum, which he claims was unauthorized, was a violation of a constitutional right. Without attempting to define the constitutional guarantee of a right of privacy—see *Wolf v. Colorado,* 338 U. S. 25 (1949) and *Frank v. Maryland,* 359 U. S. 360 (1959)—we need only point out in answer to this contention that the right of both state and federal taxing authorities to compel production of books, papers and records pertinent to the establishment of the tax liability of an individual has long been held to be free from constitutional impediment. See, *e. g., Foster v. United States,* 265 F. 2d 183 (C.A. 2nd, 1959), *cert. den.,* 360 U. S. 912 (1959); *Falsone v. United States,* 205 F. 2d 734 (C.A. 5th, 1953), *cert. den.,* 346 U. S. 864 (1953); *Gange Lumber Co. v. Henneford,* 53 P. 2d 743 (Wash. 1936); Annotation, *Constitutionality of statutory provisions for examination of records, books or documents for taxation purposes,* 103 A.L.R. 522.

Although this Court has not heretofore had an occasion to consider the basic questions raised here concerning the con-

stitutionality of the statute,[1] we did have occasion in *Md. Unemp. Compensation Board v. Albrecht,* 183 Md. 87, 36 A. 2d 666 (1944), to remark (at p. 94) that "the presumption in favor of constitutionality is particularly strong because the Unemployment Compensation Law is a remedial statute and should be construed as far as possible in such way that its objective of alleviating economic distress may be accomplished." In *Celanese Corp. of America v. Davis,* 186 Md. 463, 47 A. 2d 379 (1946), we held that an amendment of the "tax" provisions was not unconstitutional as being discriminatory as applied to the employer. And, in *State, Use of Emp. Sec. Bd. v. Rucker,* 211 Md. 153, 126 A. 2d 846 (1956), we reiterated that the statute should be liberally construed. In the instant case, we hold that there is nothing in the statute violative of the appellant's right to due process and freedom of contract.

We come now to the consideration of the principal question of whether the appellant was an employer within the meaning of the UIL during the period in controversy. Section 20, in enumerating and defining the technical terms of the statute, has made it easy to interpret those parts of the statute with which we are presently concerned.

By subsection (e) an "employing unit" is defined as "any individual or type of organization * * * which has in its employ one or more individuals performing services for it * * *."

Subsection (g)(1) defines "employment" as "service * * * performed for remuneration or under any contract of hire, written or oral, express or implied."

Subsection (g)(6) provides that "services performed by

---

1. We note that at least five *nisi prius* courts have had occasion to decide questions concerning the UIL (though apparently no constitutional questions were involved), none of which were ever appealed. See *Wolford v. Dept. of Emp. Sec.,* 243 Law Allegany County (Henderson [George], J., 1954); *Miller v. Emp. Sec. Bd.,* Dkt. 55/312 Sup. Ct. Balto. City (Manley, J., 1955); *Post Taxicab Co. v. Emp. Sec. Bd.,* 7213 Law Anne Arundel County (Michaelson, J., 1956); *Copeland's Barber Shop v. Healey,* Dkt. 58/1198 Sup. Ct. Balto. City (Oppenheimer, J., 1959); *Maisonneuve v. Bd. of Ap. of D.E.S.,* 13420 Law Prince George's County (Marbury, J., 1961).

an individual for wages or under any contract of hire shall be deemed to be employment subject to this article [UIL], irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the executive director that:

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service in question."

We think it is clear that the appellant falls squarely within the statutory definitions of "employment" and of an "employing unit." He is an individual and he has, or had, other individuals in his employ performing services for him for remuneration or under a contract of hire. The fact that such employed individuals were designated by the employer as "associates and part-time helpers," or even as "independent contractors," in the absence of proof of that fact, had no effect on his liability to make contributions to the unemployment fund. See *In Re Zeits,* 31 N. E. 2d 209 (Ind. 1941), in which it was held that "senior" partners, who had employed "junior" partners to work in a box manufacturing plant for hourly "credits" subject to withdrawal ten days after accrual, were held to be an "employing unit" within the meaning of the statutory definition of that term, which was the same as it is here. Other than this the employer admitted that he had employed part-time helpers and there was absolutely no proof that any of his employees were independent contractors.

Moreover, since the services thus performed are presumed

to be employment under the statute—regardless of whether or not there was a common-law relationship of master and servant between the employer and employee—until it is shown by the employer, who has the burden of so showing, that a person rendering such service comes within all three of the enumerated exceptions—(A) freedom from control or direction; (B) service outside the usual course of business; and (C) customary engagement in an independently established occupation—which was not done in this case, the conclusion that the appellant is liable for such contributions as are due and payable is inescapable.

There is considerable authority to the effect that the enumeration of the A-B-C tests does not indicate that all of the conditions creating the exceptions must concur. See 48 Am. Jur., *supra*, § 17. But there is also authority to the contrary. See, for example, *Zelney v. Murphy*, 56 N. E. 2d 754 (Ill. 1944). We think it is apparent that in this State, where the three tests are stated conjunctively instead of disjunctively, the legislature has indicated that in order to exempt a person rendering services for another from the operation of the statute that person must come within all three of the exceptions.

We also think it is clear that the statute is controlling on the question of whether the definition of employment is more inclusive than the common-law relationship of master and servant. Since § 20(g)(6) specifically provides that it is, that is an end of the matter. See *Karlson v. Murphy*, 56 N. E. 2d 839 (Ill. 1944); *Singer Sewing Machine Co. v. State Unemp. Comp. Comm.*, 116 P. 2d 744 (Ore. 1941); *Industrial Comm. v. Northwestern Mutual L. Ins. Co.*, 88 P. 2d 560 (Colo. 1939).

The action of the lower court in affirming the decision of the board of appeals was correct and its order to that effect will be affirmed. The D.E.S. will, of course, make such adjustments as are proper (as suggested by Judge Macgill) when the appellant complies with the decision of the board as he must do.

*Order affirmed; appellant to pay the costs.*