DEPARTMENT OF EMPLOYMENT SECURITY *v.*
CHARLIE'S BARBER SHOP, Etc.

[No. 152, September Term, 1962.]

*Decided January 29, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*James N. Phillips, General Counsel,* with whom were *Thomas B. Finan, Attorney General, Bernard S. Melnicove, Special Assistant Attorney General,* and *Peter Sfekas, Assistant General Counsel,* on the brief, for appellant.

*Marcus J. Williams* for appellee.

MARBURY, J., delivered the opinion of the Court.

The appeal here is from a decision and order of the Circuit Court for Worcester County, dated June 11, 1962, reversing an order of the Board of Appeals of the Department of Employment Security for the State of Maryland, dated December 6, 1961. The decision of the Board held that the appellee, Charlie's Barber Shop, Charles E. Beacht, proprietor, was an employer within the meaning of the Unemployment Insurance Law of Maryland and that contributions were payable, as provided by that law, on the earnings of persons "renting" chairs in the barber shop owned and operated by Mr. Beacht for the period of time from and including the third calendar quarter of 1959 to the present. The decision of the court would have the effect of removing unemployment insurance coverage from barbers rendering services in the shop.

Appellee, a master barber, has owned and operated a barbershop in Ocean City, Maryland, since May 17, 1957. From that date and through the second calendar quarter of 1959, he had filed employment reports and contribution returns with the appellant showing the names and earnings of the barbers who were employed in the shop, under the provisions of the Unem-

ployment Insurance Law, Code (1957), Article 95A, and the unemployment insurance tax was paid on those wages at the proper rate and in the correct amount. Appellee's business is seasonal. During the winter months he was able to operate the shop alone. However, in the summer, he hired extra barbers to accommodate the increased business. He has four chairs in his shop. During the 1957 and 1958 summer seasons, appellee paid his barbers on a commission basis, but experienced difficulty with his summer employees. On occasions they would not report for work or would leave early. This laxity on their part was costly to appellee, since he was renting the building, and when a chair was not in use, he derived no income from it. Prior to the 1959 summer season, appellee, after consultation with his accountant and his attorney, decided on an arrangement whereby he would lease the chairs by means of a written agreement, in order to bind the barbers more tightly.

Under the terms of the rental lease, each barber was to pay appellee a stipulated weekly amount for the use of the chair plus $5 per week for tonics and linens. Each barber was to pay the amount until the expiration of the lease even though he might have vacated the chair for any reason. Each lessee had access to the use of the chair during normal working hours, but was under no duty to report for work. Each lessee was free to set his own prices and was to keep any money paid him for services rendered plus all tips, with no accounting to the appellee-lessor. It appears, however, that uniform prices were charged. The lease also provided that each barber was to render service to customers "in harmony with all other barbers." Each lessee had his own key to the shop, his own name posted behind his chair, his own price list posted, and each one had his individual business cards. Each lessee paid his own federal income tax and self-employed Social Security tax. Each barber furnished his own tools of the trade. The telephone directory listed only "Charlie's Barber Shop" with no mention of the individual barbers. During the period in question, two other master barbers, in addition to the appellee, and one apprentice, were working in the shop.

When appellee filed his 1959 third quarter return, he listed

no employees and requested no further return forms to be mailed to him for filing until further notice, and since that time has filed no quarterly returns.

The basic question in this case is substantially this: Are the barbers who work in the shop operated by appellee rendering services outside the purview of the specific provisions of the Maryland Unemployment Insurance Law relating to the definition of employment as set out in Code (1957), Article 95A, §§ 20 (g) (6) (A) (B) and (C)?

Section 20 (g) (1) defines "employment" as "* * * service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied." Section 20 (g) (6) provides that:

> "Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this article, irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the Executive Director that
>
> (A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service in question."

Questions of coverage under the Unemployment Insurance Law have not often come as far as this Court, although there are several nisi prius decisions to which we have been referred.[1] However, in *Warren v. Board of Appeals,* 226 Md.

---

1. *Maisonneuve v. Bd. of Ap. of D. E. S.,* 13420 Law Prince

1, 172 A. 2d 124, we held that the authorities who are charged with the enforcement of the law may look through the "tag" placed on the employment relationship by the parties and determine, as a matter of fact, whether the relationship comes within the purview of the statute. We also found in that case that although in some jurisdictions the enumeration of the A-B-C tests (as used in the statute) does not indicate that all of the conditions creating the exceptions must occur, in this State, where the three conditions are stated conjunctively instead of disjunctively, the purpose of the statute was to require a satisfaction of all three conditions in order to exempt a person rendering services for another from the operation of the statute.

At the inception of the unemployment insurance program it must have been apparent to the drafters of the statute that employers would attempt to avoid coverage under the Act by creating "lease" arrangements, and for that reason a special definition of employer-employee relationship was included in this statute. The test is a much stricter one than the common law test. Basically, Section 20 (g) (6) provides for coverage unless there is: (A) freedom from control or direction; (B) service outside the usual course of business; and (C) customary engagement in an independently established occupation. The burden is upon the employer to show that the parties concerned fall within the A-B-C test. *Warren v. Board of Appeals, supra.*

As to freedom of control or direction, it appears that appellee could not tell the other barbers how to provide services for a customer, nor could he control their working hours. It also appears that the contract of lease could not be broken by appellee if he no longer wished to have one of the barbers work in the shop, except for the clause that states they must work "in harmony" with the others. It would be unrealistic

George's County (Marbury, J., 1961); *Copeland's Barber Shop v. Healey,* Dkt. 58/1198 Sup. Ct. Balto. City (Oppenheimer, J., 1959); *Post Taxicab Co. v. Emp. Sec. Bd.,* 7213 Law Anne Arundel County (Michaelson, J., 1956); *Miller v. Emp. Sec. Bd.,* Dkt. 55/312 Sup. Ct. Balto. City (Manley, J., 1955); *Wolford v. Dept. of Emp. Sec.,* 243 Law Allegany County (Henderson [George], J., 1954).

to believe that he could not "fire" one of the barbers if he found it necessary to do so in order to protect the business patrons of the shop, particularly in the face of no applicable standards of what is to constitute "harmony." This clearly appears to be an exculpatory clause inserted in the lease so as to give appellee a "way out" of the contract, if he felt it necessary. We feel that there is not the absence of control or direction so as to satisfy (A). Although appellee may not have had the full freedom to terminate the employment relationship as is usually found in such cases, he did have such power as to amount to constructive control.

Under Section 20 (g) (6) (B), there is no question that the services were rendered within the usual course of business. They were all barbers working in a barber shop. As to subsection (C), there is no evidence to indicate that any one of the barbers was engaged in an independently established business, other than the posting of their names by their individual chairs or their ownership of individual business cards. This is not indicative of an independent business. This is a common facet of many employment relationships which never have been disputed as being within the coverage of the act, *e.g.*, the insurance agent who has his own office and his own business cards but yet is a covered employee of the insurance company.

Appellee contends that the A-B-C test is not applicable in this case, because it need only be met if the services performed were in fact performed for "wages or under any contract of hire," as provided in the first part of Section 20 (g) (6). Wages are defined in Section 20 (n) as "* * * all remuneration for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash." Here, the three "lessees" performed personal services for remuneration, even though they were paid by the customer, not by appellee. The amount collected as rent may have been the amount of profit appellee expected to make if he had paid them out of total receipts. Therefore, we find that the barbers here were in covered employment and that appellee has not sustained the burden of showing that they fall within the A-B-C test so as to be considered independent contractors.

Courts of other jurisdictions have reached the same conclusion under similar circumstances, *e.g., State v. Goessman,* 126 P. 2d 201 (Wash.), *State v. Iden,* 47 N. E. 2d 907 (Ohio), *Unemployment Compensation Commission v. Harvey,* 18 S. E. 2d 390 (Va.).

*Order reversed, costs to be paid by appellee.*