Donald E. Yurs, d/b/a Yurs Funeral Home, Plaintiff-Appellant, v. Director of Labor, Department of Labor, State of Illinois, Division of Unemployment Compensation, Defendant-Appellee.
Yurs Funeral Home, Inc., Plaintiff-Appellant, v. Director of Labor, Department of Labor, State of Illinois, Division of Unemployment Compensation, Defendant-Appellee.

Gen. No. 67–138.

Second District.

April 5, 1968.

Redman, Shearer & O'Brien, of St. Charles, for appellant.

William G. Clark, Attorney General, of Chicago, and John O'Toole and Donald J. Veverka, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

These are appeals from judgment orders in consolidated Administrative Review Actions affirming the decision of the Director of Labor of the State of Illinois that Margaret Stover, an organist, was an employee of the plaintiffs under the Unemployment Compensation Act of Illinois.

The case requires construction of sections 206 and 212 of the Unemployment Compensation Act, defining "Employment." Section 206 provides, as material here, as follows:

> ". . . 'employment' means . . . any service after June 30, 1940 performed by an individual for an employing unit . . ." (Ill Rev Stats 1965, c 48, § 316.)

Section 212 of the Act is as follows:

> "Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that—
>
> "A.  Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and
>
> "B.  Such service is either outside the usual course of the business for which such service is performed

or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"C.    Such individual is engaged in an independently established trade, occupation, profession, or business."    (Ill Rev Stats 1965, c 48, § 322.)

No question is raised on the pleadings, and the following facts are undisputed.

During the period from January 1, 1959, through February 28, 1961, and for some time prior thereto, plaintiff Donald Yurs was engaged, as sole proprietor, in operating funeral homes.    Within the period named, Yurs had three full-time employees.    In addition, a Margaret Stover played the organ in Yurs' funeral home within 26 calendar weeks in the year 1958, within 40 calendar weeks in the year 1959, and within 34 calendar weeks in the year 1960.    The January 1, 1959, beginning date for the determination and assessment against Yurs as an individual is explained by the Director's compliance with the four-year limitation period on such actions provided by section 2207 of the Unemployment Compensation Act. (Ill Rev Stats 1965, c 48, § 687.)

Effective March 1, 1961, the funeral home business was incorporated as Yurs Funeral Home, Incorporated, and continued to operate on the same basis as it had formerly. As an employer subject to the Unemployment Compensation Act, Yurs Funeral Home, Incorporated, paid contributions on the wages of its admitted employees which did not include amounts paid to the organist.    The determination and assessment against the corporation is for amounts paid the organist and is in this sense "supplemental" to those reported by the corporation.    Both cases thus are concerned with an identical basic issue which accounts for their consolidation.

The organist began playing in Yurs' funeral home about 1950.    At that time pursuant to an understanding between

Yurs and the organist, she would be available to play providing she had no prior engagement which could not be cancelled. When the organist had a previous engagement, Yurs called on another organist. The arrangement between Yurs and the organist required the latter to begin playing fifteen minutes before services. This period of background music might be reduced to as little as five minutes, depending upon the rate at which callers assembled. The organist was expected to be on time, and she was never late for a funeral. There were fifteen or twenty hymns appropriate for this preliminary music.

At times, but not always, the type of music to be played would be discussed by Yurs and the organist; if the family had a request, this was passed on to the organist by Yurs. The organist was never contacted by a family member or customer. On rare occasions there would be such a contact by a singer. The organist's playing followed a routine pattern which was subject to variations according to religious beliefs, or selections and playing intervals specified by a minister. The minister's requests were also relayed to the organist by Yurs. The organist was not directed by Yurs as to how to play the organ.

The organist was required to play selections preferred by the family as directed by plaintiffs. This was true also of selections preferred by a minister and playing interludes requested by him. She played where directed, that is, in plaintiffs' place of business or in a church. The ceremonial pattern of funeral services was determined by plaintiffs. When the organist played at the funeral home she played on an organ owned by the plaintiffs.

In an estimated 75% of the funerals handled by Yurs, services were conducted in Yurs' funeral homes; others were conducted in churches. Quite often customers were unaware of what constituted a regular funeral service. After an explanation by Yurs of what was customary, an agreement was reached as to a particular funeral ceremony, including whether or not music was desired. Ser-

100

vices followed an established ceremonial pattern determined by Yurs. It was Yurs' responsibility to the family and other participants to control funeral proceedings. When everyone was seated Yurs gave the minister his cue to begin. When the minister had completed his part of the service, he left the chapel or sat down. This was Yurs' cue to resume active charge.

The price assigned to each casket included a service "package" which included everything done at the funeral home and all services performed at the funeral. Additional charges were made for cemetery expenses, flowers, minister, or a singer, or outside hairdresser specified by the family. The charge for an organist was included in the package prices charged for the caskets. If the family had an organist of its choice, this did not change the package price. In such case, Yurs paid that organist the amount he would have paid his own organist, or if the family paid its organist, Yurs allowed a credit of the amount he customarily paid.

There is no evidence in the record that a credit was allowed to a customer if no music was desired.

When the organist began playing for Yurs, she was paid $5 per funeral. This eventually was increased to $10. She was paid $7.50 for a period in 1959. For the greater portion of the year 1960 she was paid $10 a service, and that same amount during 1961 and 1962.

The organist was paid immediately or shortly after each service. If there were two services on one day, payment was made by one check. On rare occasions when there were services on successive days, payment would be made by one check. Payment of the organist was not contingent upon Yurs' collection of the funeral bills. No withholding or payroll deductions were made from the amounts paid the organist. Plaintiffs never filed any reports indicating that the organist was an employee, and she was not included in the employee insurance carried on Yurs' payroll. On December 18, 1959, a Christmas gift or

bonus in the amount of $35 was paid to the organist, and a similar payment of $25 was made on December 19, 1960.

In the year 1959 plaintiffs provided music as a part of funeral services on more than 75 occasions. During the period from January 1, 1960, through February 28, 1961, there were in excess of 80 services conducted which included music. In 1961, from March 1, 1961 through December 31, 1961, plaintiffs furnished music more than 60 times. In 1962, the services which included music exceeded 70 in number.

Margaret Stover had played for about twenty years at weddings, funerals, churches and receptions, on a first-come, first-served basis. She maintained no place of business, but operated from her home. While the organ she played for Yurs constituted a part of the funeral home property, the sheet music she used was her own.

The director's determinations and assessments are based on reports prepared by a field agent of the Illinois Division of Unemployment Compensation. The reports list amounts paid for the period covered by both assessments, and weekly employment experience of Donald Yurs for the years 1958, 1959 and 1960.

In determining whether an employment relationship exists, the common-law concepts of master and servant are not controlling but one must look to the somewhat broader statutory definitions. Spahn v. Department of Labor, 25 Ill2d 482, 486, 185 NE2d 231 (1963) ; Peasley v. Murphy, 381 Ill 187, 44 NE2d 876 (1942). The statutory conditions in section 212 of the Unemployment Compensation Act (supra) are conjunctive, and if an individual performs services for an employing unit, he is an employee under the act unless the party can prove all three of the exemption requirements. Spahn v. Department of Labor, (supra at 487) ; Ross v. Cummins, 7 Ill2d 595, 597, 131 NE2d 521 (1956) ; Miller, Inc. v. Murphy, 379 Ill 524, 527, 42 NE2d 78 (1942). Findings of fact of the Director of Labor are prima facie correct and should

not be disturbed unless contrary to the weight of the evidence. Spahn v. Department of Labor, (supra at 490); Myers v. Cummins, Director of Labor, 9 Ill2d 582, 138 NE2d 491 (1956); Greenberg v. Industrial Commission, 23 Ill2d 106, 78 NE2d 646 (1961). The Unemployment Compensation Act is not a taxing act but is one passed to alleviate the perils of unemployment under the police powers of the State and should receive a liberal construction. Zehender & Factor, Inc. v. Murphy, 386 Ill 258, 263, 53 NE2d 944 (1944); Zelney v. Murphy, 387 Ill 492, 497, 56 NE2d 754 (1944), but the exemption provisions found in section 212 must be strictly construed against the one claiming the exemption. Ross v. Cummins, (supra at p 597).

■   Applying these rules to the facts of this case, we are of the opinion that the Director of Labor's findings and decision, as affirmed by the trial court, are substantially supported by the record and are not opposed to the manifest weight of the evidence.

It is clear that the organist performed "services" for the plaintiffs and that the latter was an "employing unit" under section 206 of the Act. Under the "package" price plaintiffs were obliged to provide organ music, not to provide Margaret Stover particularly. No employment relation was created, under the facts, between Margaret Stover and the family or customer. She was, therefore, within the broad definition of "employee" under section 206.

We next consider the exemptions contained in section 212.

We cannot say that Margaret Stover was so free from control by the plaintiffs as to preclude a determination of employment. Appellants argue that plaintiffs did not have the right to control the manner of playing the instrument. The record does not support this argument in any substantial general sense. The organist was required to play selections preferred by the bereaved family or the

minister when directed to do so by plaintiffs. She was expected to be on time to play background music before the services. Plaintiffs directed her where to play, in the funeral home or in a church. The ceremonial pattern to which she must conform was determined by plaintiffs. She was given a cue by plaintiffs to commence or stop playing if the minister did not do so. It is reasonable to assume from the circumstances that if she played inappropriate music or played in unseemly volume or tempo she could have been directed to do otherwise or subject herself to discharge. The fact that the organist was a professional who had freedom and latitude in detailed actions of her craft did not negate the general right of control over her services. Spahn v. Department of Labor, supra, at page 488.

Nor were the organist's services performed outside the plaintiffs usual course of business or place of business. There is no issue as to place. That the services were in the usual course of the plaintiffs' business is supported by the evidence that the music was included in the "package price" affixed to each casket. In discussing its services plaintiffs always discussed arrangements for music. The frequency of the inclusion of music in the funeral services indicated that it was a usual part of the services offered by plaintiffs. Plaintiffs owned the organ. It cannot be said under these circumstances that the furnishing of music was not in aid of and a part of plaintiffs' business. Miller, Inc. v. Murphy, supra; Photographic Illustrations, Inc. v. Murphy, 389 Ill 334, 59 NE2d 681 (1945).

Plaintiffs, further, did not meet their burden of qualifying under the final paragraph of section 212 relating to the operation of an independent trade or business. The charge for the organist's services was included in plaintiffs' billing of the customer. Payment to her was not contingent on collection. She operated from her home. The organ she played was owned by plaintiffs and she

is not shown to have owned one. There is no evidence that she determined the rate paid to her. Likewise there is no evidence of her professional listings or advertising. There is no sufficient evidence of the right to operate without hindrance, or indicia of a proprietary interest subject to being sold or given away within the decisions in Murphy v. Daumit, 387 Ill 406, 56 NE2d 800 (1944); Spahn v. Department of Labor, supra, or Photographic Illustrations, Inc. v. Murphy, supra.

Appellants argue that the provisions of section 212, to arrive at reasonable conclusions, must be construed by first applying a statement in Mowry v. Board of Review, 411 Ill 508, 513–514, 104 NE2d 280 (1952), quoted in turn from Bartels v. Birmingham, 332 US 126:

> ". . . in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service."

However, the Mowry case did not interpret section 212 which is the section involved here. Moreover, the quotation from the Bartels case was in reference to a section of the Federal Unemployment Tax Act which specifically limited the definition of an employee to applicable common-law rules. Here the broader statutory definition is construed and the cases construing the particular sections involved in this case are persuasive.

Finally, appellants unsupported conclusion that because Margaret Stover was a part-time employee who had other employment, she could not qualify for unemployment compensation in that even if plaintiffs did not call her, she would not be unemployed, because she played for others, is not relevant. The Act does not predicate, in any of its terms, a definition of "employment" contingent on a part-time employees' rights to benefits. Miller, Inc. v. Murphy, supra; Photographic Illustrations, Inc. v. Murphy, supra; Peasley v. Murphy, supra; Spahn v.

105

Department of Labor, supra; Concrete Materials Corp. v. Gordon, 395 Ill 203, 69 NE2d 841 (1946). All of these cases included part-time workers as "employees" even though work was also done for others.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.