**STATE of Delaware, DEPARTMENT OF LABOR, Appellant,**

**v.**

**MEDICAL PLACEMENT SERVICES, INC. and the Unemployment Insurance Appeal Board, Appellee.**

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 24, 1982.

Decided: Dec. 17, 1982.

**383**

Leo J. Boyle, Wilmington, amicus curiae.

Timothy A. Casey, Deputy Atty. Gen., for appellant.

Bayard Marin, of Marin & Hudson, Wilmington, for appellee.

O'HARA, Judge.

The Division of Unemployment Insurance ("Division") appeals a determination by the Unemployment Insurance Appeal Board ("Board") that the relationship between Medical Placement Services, Inc. ("M.P.S.") and its registered medical technicians failed to satisfy the tri-partite test for "employment" under 19 *Del.C.* § 3302(9), thereby exempting M.P.S. from liability for unemployment insurance payments.

This Court disagrees with the determination by the Board and reverses its decision.

This Court's inquiry in reviewing an administrative ruling is whether or not it is supported by substantial evidence and free from legal error. *Ridings v. Unemployment Ins. Appeal Bd.*, Del.Super., 407 A.2d 238 (1979). Absent an abuse of discretion, the decision of the tribunal below must be affirmed. *In Re Artesian Water Company*, Del.Super., 189 A.2d 435 (1963).

M.P.S. is in the business of supplying trained health care personnel to institutions and private individuals on a temporary basis for a fee. Those persons under contract with M.P.S. include registered nurses, licensed practical nurses, and nurses' aides.[1] M.P.S. assumes responsibility for procuring clients and pairing technicians with assignments, and collects its fee directly. Technicians are remunerated an hourly wage from M.P.S., irrespective of whether or not M.P.S. ever receives payment from its client.

The definition of "employment," for unemployment insurance tax purposes, is contained in 19 *Del.C.* § 3302(9) and includes all services performed by an individual for wages, subject to the following exclusion:

(i) Such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of services and in fact; and

(ii) Such service is performed either outside the usual course of the business

---

1. All of the aforementioned shall be hereinafter referred to as "technicians."

for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and

(iii) Such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed. 19 *Del.C.* § 3302(9)(k).

The statutory test is stated in the conjunctive and accordingly all three of the above enumerated criteria must be present before a wage earner is excluded from the purview of the Unemployment Compensation Act ("Act"). In the proceeding below, the Board held it incumbent upon the Division to negative the conditions outlined in § 3302(9)(k).

The Court initially notes that those states with similar, if not identical statutes have allocated the burden of proof to the party seeking the benefit of the statutory exemption after a showing that the individual involved has performed services for wages. *Bluto v. Department of Employment Sec.,* Vt.Supr., 135 Vt. 205, 373 A.2d 518 (1977); *C.A. Wright Plumb. Co. v. Unemployment Comp. Bd. of R.,* Pa.Cmwlth., 6 Pa.Cmwlth. 45, 293 A.2d 126 (1972); *Hasco Manufacturing Co. v. Maine Employ. Sec. Com'n,* Me.Supr., 158 Me. 413, 185 A.2d 442 (1962); *Department of Employ. Sec. v. Charlie's Barber Shop,* Md.Ct.App., 230 Md. 470, 187 A.2d 695 (1963); *Empire Theatre v. Unemployment Compensation Commission,* N.J.Supr., 136 N.J.L. 254, 55 A.2d 238 (1947). Failure of the employer to demonstrate a claimant's relationship to even one of the statutory conditions will leave him within the parameters of the Act with all its attendant benefits. Accordingly, this Court finds that the Board erred as a matter of law in placing the burden of proof upon the Division and in failing to credit any evidentiary deficiencies in the record against M.P.S. *Bluto v. Department of Employment Sec.,* supra.

The Court next examines the tenor of the relationship between M.P.S. and its technicians to determine whether it conforms to the threefold requirement of 19 *Del.C.* § 3302(9)(k). Notwithstanding any contract or understanding between the parties, a Court must look to the actual circumstances of employment to discover whether it falls within the ambit of the § 3302(9)(k) exclusion. Moreover, common law principles of master and servant do not impact the analysis. As the Court in *Hasco Manufacturing Co. v. Maine Employ. Sec. Com'n,* supra, observed in construing a similar statute:

> Unlike some of the unemployment statutes that may have been adopted in other states, our statute contains no mention of the terms "master," "servant" or "independent contractor." It is plain from its terms that the three concomitant conditions bring under the definition of "employment" many relationships outside of the common law concepts of the relationship of master and servant.[2]

Therefore, this Court confines its inquiry to the statutory requisites as they apply to the factual setting here presented.

The first consideration is whether M.P.S. controlled or directed its technicians in their performance under § 3302(9)(k)(i). Inasmuch as the language of that provision reads "has been and will continue to be free from control," the Court's inquiry includes consideration of the right to control as well as the actual exercise of control on the part of the employer.

The Board's finding of an absence of control or direction was predicated upon the lack of supervision on the part of M.P.S. with respect to the actual performance of duties, in addition to its reliance on the technician's expertise to provide the necessary care to the patient. However, courts in other jurisdictions have declined to find these two factors conclusive on the issue of

---

**2.** 19 *Del.C.* § 3302(9)(k) expressly excludes common law analysis of its provisions by prefacing the section as follows: "Notwithstanding any other provisions of this chapter and irrespective of whether the common-law relationship of employer and employee exists ..."

control. For example, in *Department of Employ. Sec. v. Charlie's Barber Shop*, supra, the putative employer was a master barber who rented chairs in his shop to other barbers. Far less compelling than the instant case were the terms of the agreement of the parties with respect to the absence of control.[3] Nonetheless, the Court concluded that the master barber's ability to terminate the arrangement amounted to constructive control. Germane to the situation at bar, the master barber could not direct the actual performance of his associates in the practice of their trade.

Similarly, a funeral director in *Yurs v. Director of Labor, Dept. of Labor, Div. of U.C.*, Ill.App., 94 Ill.App.2d 96, 235 N.E.2d 871 (1968), relied on the expertise of his organist in performing during services conducted in the funeral home. That Court, however, was not persuaded by the fact that the organist was a professional who had freedom and latitude in the actions of her craft and accordingly held that the general right of control over her services had not been negated.[4]

Particularly apposite to the case *sub judice* is *Biter v. Com., Dept. of Labor & Industry*, Pa.Cmwlth., 39 Pa.Cmwlth. 391, 395 A.2d 669 (1978), wherein the four-pronged finding giving rise to a determination that control existed clearly parallels the evidence presently before this Court. *Biter* involved the owner and operator of six buses who was under contract with a local school district to provide transportation for its students. He hired several bus drivers to perform pursuant to the contract but eschewed contributing to unemployment compensation on their behalf. The Court, in considering the element of control required under a statute similar to the one in issue herein, found the following factors dispositive:

He (1) hired or obtained approved drivers when needed, (2) required drivers to sign a form indicating that they were independent contractors before allowing them to drive his buses, (3) assigned the drivers to the routes specified by the school, and (4) established the rate and schedule of payment for the drivers and paid them out of his account.

█ In the instant case, M.P.S. maintains a pool of qualified technicians to be contacted as needed. Included in the contract of employment is a provision that the technicians "shall be solely responsible as Independent Technician." Moreover, the technicians are assigned to their respective situations as specified by M.P.S. Finally, M.P.S. determines the rate and schedule of payment and pays its technicians out of its own account.

This Court is persuaded by the rationale of the above cited authority, evidencing a liberal interpretation of "control," as well as the conclusions of the *Biter* Court presented with almost identical facts, that this Court should find that M.P.S. effectively "controls" its technicians and consequently the requirement of 19 *Del.C.* § 3302(9)(k)(i) has not been satisfied.

As stated earlier, the failure to satisfy even one prong of the threefold standard

---

3. The parties in *Charlie's Barber Shop* operated under the following arrangement:

> Under the terms of the rental lease, each barber was to pay appellee a stipulated weekly amount for the use of the chair plus $5 per week for tonics and linens... Each lessee had access to the use of the chair during normal working hours, but was under no duty to report for work. Each lessee was free to set his own prices and was to keep any money paid him for services rendered plus all tips, with no accounting to the appellee-lessor...
> Each lessee had his own key to the shop, his own name posted behind his chair, his own price list posted, and each one had his individual business cards. Each lessee paid his own federal income tax and self-employed Social Security tax. Each barber furnished his own tools of the trade.

4. In *F.A.S. Intern., Inc. v. Reilly*, Conn.Supr., 179 Conn. 507, 427 A.2d 392 (1980), the Court noted the propensity of those jurisdictions with purely statutory definitions of employment to require very little supervision over the details of performance in order to find control. The operative statute in that case was merely a condification of common-law principles of the employer-employee relationship.

articulated in § 3302(9)(k) will result in application of the Act to the claimants herein. Nonetheless, the Court continues its statutory analysis in order to correct the remaining errors of law contained in the Board's decision.

■ Clause (ii) of § 3302(9)(k) specifies that services shall be deemed employment unless and until it is shown by the employer that such services were performed outside the employer's usual course of business or that they were performed outside of the places of business of the employer's enterprise. The Board determined that since "all work was done in private homes or nursing homes and . . . Medical Placement Services provided no location for work . . . and equipment for work," the second requisite had been met. This Court disagrees.

The Board's narrow definition of "place of business" fails to address clause (ii) in its entirety. The phrase correctly reads "all the places of business of the *enterprise* for which the service is performed." (Emphasis supplied). The nature of the M.P.S. is such that business cannot be transpired on its premises; the enterprise in which M.P.S. is engaged involves supplying technicians *to medical facilities and private homes.* Therefore, the latter locations are necessarily included within the enterprise and are, thus, subsumed within "place of business" as contemplated by § 3302(9)(k)(ii).[5]

Accordingly, the Court finds that the Board erred as a matter of law in holding that clause (ii) was satisfied.

■ Finally, the Court takes issue with the Board's summary finding that the technicians were customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the services performed on behalf of M.P.S. 19 *Del.C.* § 3302(9)(k)(iii). In support of that finding, M.P.S. asserts that the situation at bar parallels that in *Tri-Cities Nurses Registry, Inc. v. Ross,* N.Y.Supr., App.Div., 56 A.D.2d 964, 393 N.Y.S.2d 98 (1977), wherein the Court held that registered nurses and licensed practical nurses who utilized the answering service of a nurses registry corporation for the purpose of obtaining employment were independent contractors. That case, however, is readily distinguishable from the instant controversy. The *Tri-Cities* nurses were not paid by the registry corporation. They shared fees paid weekly to Tri-Cities by the patients and determined as a group who had rendered services and the sum to which they were entitled. Any one of the group could and did man the answering service and either accepted the call herself or referred it to a colleague. Unlike the registry corporation, which was merely a liason between nurse and patient, M.P.S. actively procures its clients and employs its own discretion in pairing technicians with their respective assignments. Moreover, M.P.S. assumed total administrative responsibility in its enterprise, particularly with respect to wages, further distinguishing it from the registry in *Tri-Cities.* In light of these marked differences, the Court finds any comparison between the two cases untenable.

In *Yurs v. Director of Labor, Dept. of Labor, Div. of U.C.,* supra, the Court held that the organist who performed in a funeral home was not engaged in an independently established trade, in spite of her numerous other contracts for performing at weddings, receptions, and church services.[6]

---

**5.** In *Bluto v. Department of Employment Sec.,* supra, "place of business was held to include the business area in which the employer operated." 373 A.2d at 521. The sole authority cited by M.P.S., *F.A.S. Intern., Inc. v. Reilly,* supra, for its contrary proposition, is of no assistance whatsoever since that second prong of that statute was not even in issue.

**6.** Germane to the controversy herein, this factor dilutes M.P.S.'s argument that its techni-

cians work for other medical agencies, are not economically dependent on M.P.S., and therefore are independent contractors under 19 *Del.C.* § 3302(9)(k)(iii). In order to be considered "established" the occupation or business must be permanent, fixed, stable, and lasting in nature. *Unemployment Compensation Commission v. Collins,* Va.Supr., 182 Va. 426, 29 S.E.2d 388 (1944). Furthermore, the individual must pursue the occupation, profession,

Factors contributing to the *Yurs* Court's finding that an independent trade or business had not been established were: 1) the charge for the organist's services was included in the mortician's billing of his customer with payment not contingent on collection therefrom; 2) there was no evidence that the organist determined the rate paid to her; and 3) there was no evidence of any professional listings or advertisement of her services.[7] These same factors are present in the arrangement at issue herein and militate in favor of a finding that the technicians are not independently established contractors under 19 *Del.C.* § 3302(9)(k)(iii). This Court so determines.[8]

The Court additionally notes the language of the Board's pronouncement which underlies the errors of law which pervade its ruling. Specifically, the Board stated that it was "satisfied that the common-law relationship of employer/employee does not exist in connection with these nurses and technicians." As the Court stated earlier, the proper analysis is statutory and not to be impacted by common-law principles. For this reason, and in the absence of any guidance from our own Delaware case law, the Court has painstakingly examined authority from other jurisdictions in fashioning its interpretation of 19 *Del.C.* § 3302(9)(k). In light of this authority and based on the evidence of record, the decision of the Board must be reversed, thereby rendering Medical Placement Services, Inc. an "employer" liable for unemployment insurance contributions.

IT IS SO ORDERED.

---

or business on his own behalf and not as the servant or employee of another. *Commonwealth, Bureau of Emp. Sec. v. Hecker & Co.,* Pa.Cmwlth., 409 Pa. 117, 185 A.2d 549 (1962). That the technicians in question worked for a patchwork of other agencies and placement services in addition to their parttime employment with M.P.S. suggests that their trade is neither fixed nor pursued on their own behalf.

7. The Court also noted that the parttime nature of the organist's employment did not preclude coverage under the Illinois Unemployment Compensation Act. Similarly, permanent or full-time employment is not a prerequisite for inclusion under Delaware's Act. See *Harper v. Unemployment Insurance Appeal Board,* Del. Super., 293 A.2d 813 (1972).

8. Even more persuasive in resolving the controversy at bar is *Claims of Rinaldi,* N.Y.Supr., App.Div., 281 A.D. 1051, 121 N.Y.S.2d 155 (1953), a case which involved a business organization supplying to its clients' office workers on a parttime basis. Pursuant to an interview, the putative employees completed forms indicating their training, experience, availability, and preference of locality of work, and were paired with assignments at the bureau's discretion. The bureau set an hourly wage for its workers which was less than the fee charged its clients. As in the case at bar, payment of wages was not contingent on collection of clients' fees. Notwithstanding the lack of supervision or control exercised over these workers, the Court, nonetheless, deemed the arrangement tantamount to employment.