# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SEAFORD INTERNAL
MEDICINE, LLC,

       Appellant,

      v.

MARIA SANDOVAL and
UNEMPLOYMENT
INSURANCE APPEAL BOARD,

       Appellees.

: 
:
:
:
: C.A. No. S19A-04-001 CAK
:
:
:
:
:
:
:
:
:

Submitted: June 26, 2019
Decided: July 15, 2019

***Upon Appellant Seaford Internal Medicine, LLC's Appeal***

**GRANTED**

## MEMORANDUM OPINION

Jennifer G. Brady, Esquire, Potter Anderson & Corroon LLP, Hercules Plaza - Sixth Floor, 1313 North Market Street, Wilmington, DE 19801; Attorney for Appellant.

Daniel C. Mulveny, Esquire, State of Delaware Department of Justice, Carvel State Office Building, 820 North French Street, Wilmington, DE 19801; Attorney for Unemployment Insurance Appeal Board

Ms. Maria Sandoval, *Pro Se*, 29821 Young Lane, Laurel, DE 19956

**KARSNITZ, J.**

In this appeal from a decision of the Unemployment Insurance Appeal Board ("the Board") the dispositive issue is what is good cause justifying an employee's voluntarily leaving her job, but still retaining the right to unemployment benefits. Appellee, Maria Sandoval quit her job because she was not given the raise she claimed was promised her at her ten year anniversary. The Board found Ms. Sandoval's complaints legitimate, and ample evidence in the record supports that finding. I am sympathetic to Ms. Sandoval's circumstance. However, the controlling Delaware Supreme Court precedent requires that the reason for voluntarily leaving employment must be such that "... no reasonably prudent employee would have remained employed;"[1] to constitute good cause, and allowing the employee to remain eligible for unemployment compensation. Using that high standard, and with some reluctance I reverse the decision of the Board.

## FACTS

Ms. Sandoval was employed by Seaford Internal Medicine, LLC ("Seaford Medicine") or a related entity from March 2008 until she voluntarily left in October of 2018. The essence of her dispute with her employer was her contention that it had promised her an all expenses paid for trip and $1.00 per hour raise on her tenth year work anniversary. The parties had no written agreement, and the employer disputed Ms. Sandoval's claims.

---

[1] *Thompson v. Christiana Care Health System*, 25 A.3d 778, 783 (Del. 2011)

Not surprising over ten years things change. According to the employer it had financial difficulties which prevented it from giving Ms. Sandoval the raise she asked for and which she believed she had been promised. By the ten year anniversary Ms. Sandoval had received other raises and was earning $17.00 per hour.

Seaford Medicine's managing partner, Jona Gorra, M.D. tried to resolve the issues, eventually paying $3,000.00 to Sandoval in lieu of a trip, and offering a $.25 per hour raise. The raise was effective in Sandoval's paycheck for the week of September 19, 2018. Shortly after receiving the check Sandoval resigned.

In November, 2018 a Claims Deputy denied Sandoval's claim for unemployment benefits, finding she voluntarily resigned without good cause. In January, 2019 an Appeals Referee reversed the decision, finding that a substantial reduction in compensation from the original agreement of hire had occurred. In March, 2019 a majority of the Board concluded that Seaford Medicine made a substantial deviation from the terms of employment giving Sandoval "good cause to quit".[2]

---

[2] The facts are all contained in the record from the Board.

## A PROCEDURAL QUESTION

The Board mailed its decision to the parties on March 21, 2019. 19 *Del. C.* §3322(a) dictates that the decision would be final March 31, 2019 (a Sunday). 19 *Del. C.* §3323(a) gives parties 10 days to appeal a Board decision. The appeal was filed by Seaford Medicine on April 11, 2019. I have received as part of this case file a letter from an attorney for the Board in which he contends the appeal is untimely, having been filed 11 days from March 31.[3]

In response Seaford Medicine argues that Superior Court Civil Rule 6(a) controls and because the appeal period is less than 11 days, intervening weekends and holidays are not to be counted in calculating the 10 day period. Counting to 10 should not be difficult. On the other hand Rule 6(a) recognizes that when short periods of time are allotted intervening periods where traditionally government agencies, and people in general, are not working justifies not counting the days of leisure. Superior Court Civil Rule 6(a) reads in full:

---

[3] The Board otherwise takes no position as to the merits of the appeal.

"*Computation.* In computing any period of time prescribed or allowed by these Rules, by order of court, or by statute, the day of the act, event or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday or Sunday, or other legal holiday, or other day of which the office of the Prothonotary is closed, in which the office of the Prothonotary is open. When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and other legal holidays shall be excluded in the computation. As used in this rule, "legal holdiays" shall be those days provided by the statute or appointed by the Governor or the Chief Justice of the State of Delaware."

As can be viewed in the quote Rule 6(a) expressly governs time periods allowed by the Rules...or by Statute.

The Board in its letter provided citation to *Williams v. Singleton*[4] which it asserts stands for the proposition that until an appeal is appropriately filed, the Superior Court has no jurisdiction and Rule 6(a) no application. In other words 10 days remains 10 days. *Williams* involved an older version of 10 *Del. C.* §9571(a) governing appeals from Justice of the Peace Court. The specific holding in *Williams* was altered by subsequent statute.[5] The statute construed in *Williams* was also very specific in the counting, and the Court found where there was a

---

[4] 160 A.2d 376 (Del. 1960)

[5] See *Reed v. Clark's Swimming Pools, Inc.*, 1997 WL 1737122 (Del. Com. Pl. Sept. 19, 1997)

specific conflict between the rule and the statute, the latter controlled. The *Williams* determination was made in the face of 10 *Del. C.* §561 which allows this Court to regulate practice and procedure through adoption of rules which shall supercede all statutory provisions in conflict with the Court Rules.

By contrast this Court has ruled on numerous occasions that the counting process of Rule 6(a) controls appeals from the Unemployment Insurance Appeals Board. By way of example, in *Jamison v. Delaware Department of Labor*[6] this Court applied Rule 6(a) in calculating the appeal period from decisions of the Board. See *Wilkerson v. Schwan's Sales,*[7] *Dillmore v. Ulta Beauty Salon,*[8] *Church v. Ferguson*[9] and *Spangler v. Unemployment Insurance Appeals Board*[10] for the same application of Rule 6(a).

While the issue is not free from doubt it appears to me that the *Williams* ruling was confined to a statute that was specific in its direction as to "counting". Given the dictates of 10 *Del. C.* §561 as well as the consistent determinations of this Court I determine that Superior Court Civil Rule 6(a)

---

[6] 2013 WL 5879510 (Del. Super. Oct. 31, 2013)

[7] 1994 WL 713880 (Del. Super. Nov. 30, 1994)

[8] 2013 WL 5788590 (Del. Super. Oct 15, 2013)

[9] 2003 WL 21537995 (Del. Super. May 29, 2003)

[10] 2016 WL 1613232 (Del. Super. March 23, 2016)

applies and the appeal is timely.

## STANDARD OF REVIEW

The standard of review is well-known. As in almost all appeals I review factual determinations to see if they are supported by substantial evidence, giving deference to the Board's expertise and its ability to assess the credibility of the evidence. I provide plenary review of legal questions.[11] Whether an employee has good cause in support of a voluntary quitting a job is a question of law subject to full review.[12]

## ANALYSIS

19 *Del. C.* §3314(1) disqualifies anyone from unemployment benefits if that person quits a job "...voluntarily without good cause attributable to such work...". In *Thompson v. Christiana Care Health System*[13] our Supreme Court provided the standard for good cause as follows:

---

[11] *State, Department of Labor v. Medical Placement Services, Inc.*, 457 A.2d 382 (Del. Super. 1982), *aff'd.*, 467 A.2d 454 (Del. 1983).

[12] *State ex rel. Department of Labor v. Unemployment Insurance Appeal Board*, 297 A.2d 412 (Del. Super., 1972)

[13] 25 A.3d 778, 783 (Del. 2011)

> ...good cause is established where: (i) an employee voluntarily leaves employment for reasons attributable to issues within the employer's control and under <u>circumstances in which no reasonably prudent employee would remain employed</u>; and (ii) the employee first exhausts all reasonable alternatives to resolve the issues before voluntarily terminating his or her employment. (*emphasis supplied*)

The Court set a high bar. The language emphasized above requires circumstances in which no reasonably prudent employee would remain employed. In my view Ms. Sandoval has not met the no reasonable employee requirement. Substantial evidence supports a determination that Ms. Sandoval's concerns were attributable to issues within the employer's control, and she exhausted all reasonable alternatives to resolve the issues.

The Superior Court has applied the good cause standard in a variety of settings. In a pre-*Thompson* case the Superior Court found that paying an employee $.50 less per hour than what was promised was good cause.[14] By contrast claims of discrimination along with not receiving a pay raise he felt was due was not good cause.[15] In *Dahling v. Sure Equipment*[16] this Court held that "...a substantial deviation in employee's agreement of hire may constitute <u>good</u> <u>cause</u>

---

[14] *Harris v. Academy Heating and Air*, 1994 WL 319231 (Del Super. June 6, 1994)

[15] *Linder v. Foulk Manor North*, 1994 WL 637318 (Del. Super. Mar. 15, 1994)

[16] 1995 WL 339181 (Del. Super. May 10, 1995)

for quitting, especially if such deviation results in a reduction in employee's pay," (emphasis added).[17] *Geesaman v. Willlow Oak, Inc.*[18]involved a claim that failing to receive a pay raise constituted good cause, but the case was decided on the question of whether or not the claimant had failed to exhaust other alternatives. The Court affirmed a Board determination that a resignation in the face of loss of use of a company track and a substantial reduction in pay constituted good cause.[19] In *MRPC Financial v. Carter*[20] the Court affirmed a decision of the Board finding good cause for quitting when the employee was faced with a demotion and $20,000.00 pay cut. All of these cases pre-date *Thompson*.

To me *Thompson* raised the bar. *Thompson* requires that the circumstances presented to the employee must be such that no reasonably prudent employee would remain employed. A failure to give a promised $1.00 per hour increase to an employee earning $17.00 per hour does not for me present a circumstance in which "no reasonably prudent employee" would remain employed.

Ms. Sandoval was angered by what she reasonably believed was a

---

[17] *Id.* at *4.

[18] 1995 WL 562148 (Del. Super. Aug. 10, 1995)

[19] *Hopkins Constr, Inc. v. Unemployment Appeals Board*, 1998 WL 960713 (Del. Super. Dec. 17, 1998)

[20] 2003 WL 21517977 (Del. Super. June 20, 2003).

breach of a promise on the part of her employer. She had every reason to be angered. The Board's findings in this area are appropriate and supported by substantial evidence. But Ms. Sandoval admitted to the Appeals Referee that "...I know it sounds silly to, you know, to resign for that reason."[21] While I do not believe it is silly to assert a claim to what was promised, I find leaving her job was not something "no reasonably prudent employee" would do. According to the directive of the Delaware Supreme Court I am required to reverse the Board's decision and order that Ms. Sandoval's claim be DENIED.

Seaford Medicine raised a number of other issues. I do not address them given my decision on the good cause issue.

In light of the foregoing, I reverse the Board's decision and remand the matter for action consistent with this decision.

IT IS SO ORDERED

---

[21] Citation in Appeal transcript, p.52